*59 OPINION OF THE COURT
Simons, J.
 These two appeals present, in different contexts, various problems involving the application of the Rosario rule (see, People v Rosario, 9 NY2d 286, rearg denied 9 NY2d 908, cert denied 368 US 866, rearg denied 14 NY2d 876, rearg denied 15 NY2d 765; see also, CPL 240.45). That rule requires generally that the People provide defense counsel with all pretrial statements of prosecution witnesses. The questions raised by these prosecutions include the nature of Rosario material; the obligation of the People to produce it even though it is available to the defense by subpoena; whether the People may be excused because of their good faith in failing to deliver such material; and whether the People’s omissions in these cases constitute a failure to produce, and thus are not subject to harmless error analysis, or merely a delay which does not require reversal unless it caused substantial prejudice to the defendant (see, People v Perez, 65 NY2d 154, 159). For reasons hereafter stated, both judgments must be reversed.

People v Ranghelle

Defendant Patsy Ranghelle appeals from an order of the Appellate Term affirming a judgment convicting him of obstruction of governmental administration, second degree; menacing and harassment. The Appellate Term affirmed the judgment, notwithstanding the People’s failure to timely provide Rosario material to defendant, finding that the failure was not deliberate and did not deprive defendant of a fair trial.
The convictions arose from an incident which occurred when complainant Doreen Nazario, a New York City Department of Sanitation enforcement agent, attempted to serve defendant with a summons for violating city codes in the repair of his Brooklyn apartment building. Nazario claimed that defendant threw a piece of wood at her and threatened to blow off her head with a nearby rifle. Following this incident, Nazario filed charges in the city’s 77th police precinct. Later that day, after an alleged confrontation between Department of Sanitation Supervisor Harry De Vito and defendant outside a Department of Sanitation garage, De Vito filed a second complaint against defendant in the 72nd police precinct. The two complaints were filed at different precincts because proper procedure required that complaint reports be filed in the *60 precinct in which the incident occurred, and the two incidents involving defendant had occurred in different precincts. The latter complaint, in the 72nd precinct, resulted in a second harassment count against defendant which was subsequently dismissed after trial.
De Vito’s complaint report for this second incident was included in the People’s production of Rosario material prior to trial. The Nazario complaint report filed with the 77th police precinct and detailing her account of the first incident was not. Thus, during his cross-examination of Nazario, defense counsel moved for production of her report. The prosecutor stated that it was not in the People’s possession and that Officer Lloyd, another police officer scheduled to testify later in the trial, would bring it with her when she appeared. The Trial Judge refused to adjourn the trial until the report was produced, ruling that defense counsel could recall the complainant for further cross-examination after receipt of the report, if, necessary. When Officer Lloyd appeared, however, she did not have the report. Defense counsel did not make any motion directed at the failure to produce the report at that time, but, at the close of the People’s case, he moved to dismiss the complaint because the People had failed to comply with the requirements of the Rosario rule. The prosecutor argued that she had not violated the rule because the report was not in the People’s possession, that she had made every effort to produce it and that Officer Lloyd’s failure to recognize it was understandable because the report in the 77th precinct identified defendant by another name. The Trial Judge denied defendant’s motion, finding that the failure to produce did not appear to be "terribly prejudicial in any way”. Both sides rested their case and the jury was instructed that the evidence was closed. The report was subsequently produced before summations started. It was brief, and not inconsistent with the witnesses’ testimony, but did omit some details of the incident about which complainant had testified. After seeing the report, defense counsel renewed his motion to dismiss the complaint and the Trial Judge again denied the motion, reasoning that inasmuch as the report was not inconsistent with Ms. Nazario’s testimony defendant had not been prejudiced in cross-examining her. Nevertheless, the court offered defendant the opportunity to recall Nazario for further cross-examination. Counsel declined the offer.

*61
People v Buster

Defendant John Buster appeals from an order of the Appellate Division, First Department, that affirmed, without opinion, the judgment convicting him of one count of robbery, first degree, and two counts of robbery, second degree. All three charges stemmed from a single incident during which Aquilino Benitez, a student attending Columbia University, was robbed by two men in the elevator of his apartment building. At trial, Benitez was the chief witness for the prosecution. He testified that on the day in question two men entered the elevator with him at the ground floor, stopped it at the sixth floor, and then robbed him of jewelry and money after displaying a gun and a knife. Although Benitez described the event in detail, he gave no description of the robbers beyond differentiating between them as "older” and "younger”. Benitez made an in-court identification of defendant and his codefendant, and he testified to his prior identification of the two men during separate lineups at the police station.
The defense theory was misidentification. Aware that incident reports completed by a police officer and a Housing Authority detective contained descriptions of the robbers obtained from Benitez that varied from the physical attributes of defendant and his codefendant, and assuming that these incident reports constituted all the Rosario material to which the defendant was entitled, defense counsel contented himself with eliciting a detailed description of the two robbers from Benitez. He later called the police officer and the Housing Authority detective, as witnesses for defendant, and questioned them regarding the descriptions of the robbers contained in their incident reports in an attempt to impeach Benitez’s testimonial descriptions by showing the inconsistent descriptions contained in the incident reports.
On cross-examination and over defense counsel’s repeated objections and requests for a sidebar, the prosecutor was permitted to elicit testimony that both officers had kept memo books containing notes of their investigation of the Benitez complaint. In response to the prosecutor’s questions as he read from the memo books, both witnesses acknowledged that they made the notes while interviewing Benitez shortly after the robbery and by their testimony they confirmed that Benitez’s description of the robbers at trial and his description of them made during their investigation was consistent. The discrepancies in the incident reports, they testified, were due to errors *62 in their own transcription of Benitez’s statements from the memo books to the incident reports. Apparently, the books were never physically delivered to defendant’s counsel before all parties had rested and the evidence was closed. Defense counsel then moved for a mistrial and the Trial Judge belatedly recognized that the memo books constituted Rosario material that had not been provided to defendant. Nonetheless, she denied defendant’s motion and instead instructed the jury to disregard all testimony concerning the memo book entries. Defendant was subsequently convicted of all three charges, and the judgment was affirmed by the Appellate Division.
In People v Rosario, we held that "a right sense of justice” entitles a defendant to inspect the prior statements of a prosecution witness, prior to cross-examination, whether or not his statements vary from his testimony on the stand (People v Rosario, 9 NY2d 286, 289, supra). Recognizing that even statements which appear to be harmonious with trial testimony may nevertheless be valuable, we required that "[a]s long as the statement relates to the subject matter of the witness’ testimony and contains nothing that must be kept confidential, defense counsel should be allowed to determine for themselves the use to be made of it on cross-examination” (id.).
We have periodically refined the rule to ensure that a defendant "receives the full benefit of a [prosecution] witness’ statements for impeachment purposes” (People v Poole, 48 NY2d 144, 149). Thus, for example, in People v Malinsky we extended Rosario's disclosure requirement to apply to statements of prosecution witnesses testifying at suppression hearings, and we held that the Rosario rule covers the notes of a police officer witness made in connection with defendant’s arrest (see, People v Malinsky, 15 NY2d 86, 90-91; see also, People v Gilligan, 39 NY2d 769, 770 [notes and reports of investigating officers]). In People v Consolazio, we held that prosecutor’s worksheets are Rosario material subject, to disclosure reasoning that "[t]he character of a statement is not to be determined by the manner in which it is recorded, nor is it changed by the presence or absence of a signature” (People v Consolazio, 40 NY2d 446, 453). Most recently we applied the Rosario rule to taped statements made by a prosecution witness to private parties where the tapes were in the possession of the prosecution (People v Perez, 65 NY2d 154, 158-159, supra).
*63 Notwithstanding the strong presumption of the discoverability of prior statements of prosecution witnesses under the Rosario rule, we have fashioned some commonsense limits to mandatory disclosure. Thus, we have held that Rosario does not create a right of a defendant to examine the prosecutor’s entire file or produce material which "the necessities of effective law enforcement would require to be kept confidential” (see, People v Poole, 48 NY2d 144, 149, supra). Nor does it impose an obligation on the People to produce statements that are "duplicative equivalents of statements previously turned over to the defense” (People v Consolazio, 40 NY2d 446, 454, supra; see also, People v Payne, 52 NY2d 743). Statements are not the "duplicative equivalent” of previously produced statements, however, just because they are "harmonious” or "consistent” with them (see, People v Consolazio, supra, p 454 [and cases cited therein]; People v Rosario, 9 NY2d 286, 289-290, supra; compare, People v Kass, 25 NY2d 123, 127 [retranscribed notes]). Thus, once it is determined that the statements sought by a defendant come within the Rosario rule, the better practice is to turn over the statements immediately without further analysis as to whether the defendant is technically entitled to disclosure (People v Consolazio, 40 NY2d 446, 454-455, supra).
When the People delay in producing Rosario material, the reviewing court must ascertain whether the defense was substantially prejudiced by the delay. When, however, the prosecution fails completely in its obligation to deliver such material to defense counsel, the courts will not attempt to determine whether any prejudice accrued to the defense. The failure constitutes per se error requiring that the conviction be reversed and a new trial ordered (see, People v Perez, 65 NY2d 154, 159-160, supra). Finally, the People’s good-faith effort to locate, identify and discover all Rosario material does not excuse their failure to produce covered material (compare, People v Bigelow, 66 NY2d 417, 427 [rejecting the "good-faith exception” to the warrant requirement]; People v Simmons, 36 NY2d 126, 132 [People’s good faith will not excuse failure to turn over Brady material]).
These rules compel the conclusion that both judgments must be reversed and new trials ordered.
In People v Ranghelle, the 77th precinct complaint report, which contained a synopsis of complainant Nazario’s allegations against defendant constituted a statement of a *64 prosecution witness that should have been disclosed after she testified for the People (see, e.g., People v Gilligan, 39 NY2d 769, 770, supra). Although the description of the incident contained in the complaint report was consistent with Ms. Nazario’s testimony, it lacked essential details to which she later testified at trial, omissions which might have constituted important material for cross-examination. Accordingly, it constituted Rosario material (see, People v Rosario, 9 NY2d 286, 289, supra).
The People’s contention that defendant’s conviction should be affirmed because the People attempted in good faith to produce the report, and the delay in its production caused no prejudice, is inapposite. The People’s good faith in attempting to obtain the report is irrelevant and the failure to produce it before the evidence was closed was not a "mere delay”; it constituted a complete failure to comply with the Rosario rule as we have interpreted it (see, e.g., People v Perez, 65 NY2d 154, 159-160, supra).
Finally, we do not accept the People’s argument that the Rosario rule should not be applied where the prior statement of the prosecution witness is not in the sole custody of the People, or where the defense has knowledge of, and access to it. Where, as here, the existence of a complaint report filed with a police precinct is readily ascertainable by the prosecutor, there is no reason to dilute the Rosario obligation by holding that defense counsel should have himself subpoenaed the document. As we observed in Rosario, " 'the State has no interest in interposing any obstacle to the disclosure of the facts’ ”, and society’s interest in maintaining criminal trials as truth-finding processes requires that the burden of locating and producing prior statements of complaining witnesses, filed with police agencies, remain solely with the People (see, People v Rosario, 9 NY2d 286, 290, supra).
In the Buster case, the People contend that defendant is seeking to impose an obligation on them to produce material so that he may impeach his own witnesses. Because defendant called the officers to testify, they contend the People were not obliged to produce the officers’ memo books or, at worst, that their failure to do so could be error only if it resulted in prejudice to defendant. The memo book notes of the investigating officers, however, consisted of statements made by complainant Benitez, the prosecution’s primary witness. They detailed his initial description of the robbery and the robbers *65 and, as such, the information constituted Rosario material which should have been produced following Benitez’s direct testimony (see, e.g., People v Malinsky, 15 NY2d 86, 90-91, supra). Moreover, the oral testimony by the officers concerning the contents of their memo books does not constitute production of the material. The books themselves had to be delivered to defense counsel and delivered long before this stage of the trial if any claim based on delay is to be entertained. Inasmuch as there is no evidence in the record that the books were ever delivered to defense counsel, there can be no claim that the People’s failure constituted a delay and that defendant’s case was not substantially damaged by it (compare, People v Perez, 65 NY2d 154, 159, supra).
Finally, the People contend that they had no obligation to produce the memo books because the notes they contained were duplicative of Benitez’s statements transcribed in the officers’ incident reports. It is sufficient answer to observe that the descriptions contained in the two materials varied. The inconsistencies were minor, to be sure, but they nevertheless may be found, and thus the People cannot claim the descriptions in the memo books were the "duplicative equivalents” of the descriptions in the incident reports.
Accordingly, the order, in each case, should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Meyer, Kaye, Alexander, Titone and Hancock, Jr., concur.
In each case: Order reversed, etc.