*549 OPINION OF THE COURT
Hancock, Jr., J.
Defendant was convicted, after a jury trial, of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first and third degrees. After originally affirming his conviction (124 AD2d 1076), the Appellate Division unanimously granted defendant’s motion for reargument, vacated its prior order, reversed the judgment of conviction, and remanded the case for a new trial on the ground that the People violated the Rosario rule (see, People v Rosario, 9 NY2d 286; CPL 240.45 [1] [a])[1] and that the violation required reversal. A Justice of the Appellate Division granted the People leave to appeal. The sole issue is whether the prosecution’s total failure to deliver Rosario material to defense counsel as required by the rule is subject to harmless error analysis.
The undelivered items pertained to an important prosecution witness, one Takum Taza, an admitted former narcotics dealer who had become a paid confidential informant. The prosecution concededly violated Rosario in failing to turn over to defense counsel five pages of notes concerning Taza written by the trial assistant and a DEA-6 form containing an initial debriefing of Taza conducted by Detective Lawrence Gerhold.[2] In its original affirmance the Appellate Division took the position, as does the concurring Judge, that, because defense counsel successfully impeached Taza with other damaging *550 material in counsel’s possession, the "additional topics for impeaching [which the withheld items would have afforded] were, in context, simply cumulative, if not trivial” (128 AD2d 405, 406). The papers which the prosecutor held back would have revealed at least the following discrepancies in Taza’s trial testimony: that he had been arrested on a weapons charge; that, contrary to his testimony, he had been fired from his last job as a taxicab driver for embezzlement, and that he actually sold 2 Vi to 5 times more than the quantity of drugs which he claimed in his trial testimony to have sold.
The Rosario rule, we have repeatedly said, is founded on this court’s firm conviction that "a right sense of justice entitles the defense to examine a witness’ prior statement, whether or not it varies from his testimony on the stand” (People v Rosario, supra, at 289; see, People v Ranghelle, 69 NY2d 56, 62; People v Perez, 65 NY2d 154, 158). As we stated in People v Perez (supra, at 158), "such statements are valuable not only as a source of contradictions, and * * * no one is better equipped or motivated than defense counsel to determine how they may be useful to the defense [citation omitted]”. In People v Consolazio (40 NY2d 446, 454), we emphasized that "a failure to turn over Rosario material may not be excused on the ground that such material would have been of limited or of no use to the defense, or that a witness’ prior statements were totally consistent with his testimony at trial” and that "consideration of the significance of the content or substance of a witness’ prior statements [cannot] result in a finding of harmless error.” The rule is simple and unequivocal: if the People are in possession of a statement of their own prospective witness relating to the subject matter of that witness’ testimony, defense counsel must, in fairness, be given a copy because ordinarily counsel would have no knowledge of it and no other means of obtaining it.
Nothing about this case persuades us that our long-standing rulings, that defense counsel "is in a far better position [than the court or the prosecutor] to appraise the value of a witness’ pretrial statements for impeachment purposes” (People v Rosario, supra, at 290) and that the ultimate appraisal of the material’s usefulness must be made by defense counsel, are incorrect or not essential for achieving the fundamental objective underlying Rosario — " 'to afford the defendant a fair opportunity to cross-examine the People’s witnesses at trial’ ” (People v Perez, supra, at 158, quoting People v Poole, 48 NY2d 144, 149).
*551 In People v Consolazio (supra), People v Perez (supra) and People v Ranghelle (supra), we concluded that given the nature of a Rosario violation, harmless error cannot be applied. We reject the contention of the concurring Judge and the People that the particular circumstances of this case demonstrate that we should overrule these decisions and hold that the error was harmless because, in their opinion, the nondisclosure would have been of limited impeachment value — an opinion necessarily based on speculation as to what use defense counsel might have put them.[3] Nor are Consolazio, Perez, and Ranghelle, which the concurrer would have us overrule as "three errant footsteps”, in any respect like the precedents rejected in People v Hobson (39 NY2d 479). Here, the decisions which are criticized are separate, full opinions, written for the unanimous court by three different members. The three decisions overruled in People v Hobson (supra, at 486) — People v Wooden (31 NY2d 753), People v Lopez (28 NY2d 23, cert denied 404 US 840), and People v Robles (27 NY2d 155) — had themselves overturned previously established case law and had temporarily reversed the continuing evolution of our right to counsel rule (see, People v Hobson, supra, at 483-484). By contrast, the Consolazio, Perez, and Ranghelle decisions are consistent with prior case law (see, People v Consolazio, supra, at 454) and are part of this court’s efforts at careful development of a State standard which, while fair to the prosecution, accords to the defendant a degree of protection commensurate with the importance of Rosario rights.
Applying a harmless error analysis to a Rosario violation would, as with any error, require us to consider two discrete factors: "the quantum and nature of proof of the defendant’s guilt if the error in question were to be wholly excised”, and "the causal effect which it is judged that the particular error may nonetheless have had on the actual verdict” (see, People v Crimmins, 36 NY2d 230, 240). The nature and purpose of Rosario make such analysis impossible.
In Rosario, we emphasized that statements of prosecution witnesses are important not just as a source of contradictions, but that "[e]ven statements seemingly in harmony with [trial] *552 testimony may contain matter which will prove helpful on cross-examination. They may reflect a witness’ bias, for instance, or otherwise supply the defendant with knowledge essential to the neutralization of the damaging testimony of the witness which might, perhaps, turn the scales in his favor. Shades of meaning, stress, additions or omissions may be found which will place the witness’ answers upon direct examination in an entirely different light” (9 NY2d 286, 289, supra). It is defense counsel alone who has the responsibility for making the strategic judgments and doing the careful preparation required for planning and executing an effective cross-examination of the People’s witnesses and deciding whether and how to use the statements. When, as a result of the prosecutor’s violation of the Rosario rule, defense counsel has been deprived of material of which he or she is unaware or cannot otherwise obtain, there is no way, short of speculation, of determining how it might have been used or how its denial to counsel might have damaged defendant’s case. Such speculation would, of course, undermine the very basis of our prior decisions — that even "a judge’s impartial determination as to what portions may be useful to the defense, is no substitute for the single-minded devotion of counsel for the accused” (People v Perez, supra, at 160; see, People v Novoa, 70 NY2d 490, 499; People v Rosario, supra, at 290).[4]
It is this inability of a reviewing court, to ascertain how defense counsel might have employed the withheld material, that distinguishes cases involving Rosario violations from cases involving other errors where the application of harmless error analysis is appropriate. Where the case involves prosecutorial misconduct, erroneous evidentiary rulings, misbehavior of a juror, improper comments during summation, or other such errors, the appellate court can review the record to determine, first, the existence of error, and then, if error is *553 found, to assess the strength and persuasiveness of the admissible evidence of guilt and the probable effect, if any, of the error on the fact finder’s decision. Evaluating damage caused by a Rosario violation, by contrast, necessarily depends on a factor which is not in the record and which cannot be known —the operation of defense counsel’s mind and what different course might have been pursued if he had possessed the material.
Likewise, we reject the People’s contention, and the implication in the Appellate Division memorandum, that People v Ranghelle (supra, at 63) was a departure from the existing rule and should be overruled. In Ranghelle, we held that when, as here, the prosecution’s violation of the rule is not delay in compliance, but a complete failure to deliver the items, the violation constitutes per se error requiring reversal, and good faith or inadvertence on the part of the prosecutor is of no moment. In this holding, Ranghelle is no more than a logical application of the rule established in People v Rosario (supra) and carried forward in People v Consolazio (supra), People v Poole (supra), and People v Perez (supra). To add a good-faith exception to this settled rule, as the People and the concurrer suggest, would frustrate the very purpose and underlying policy considerations of the rule. The focus of Rosario is on fairness to defendant — not on the conduct or motives of the prosecutor. If Rosario material is denied the defendant, he has been deprived of what he should have. It matters not that the denial may have been inadvertent or immaterial.
Accordingly, the order of the Appellate Division should be affirmed.

. The Rosario rule was codified in CPL 240.45 (1) (a). CPL 240.45 states:
"1. After the jury has been sworn and before the prosecutor’s opening address, or in the case of a single judge trial after commencement and before submission of evidence, the prosecutor shall, subject to a protective order, make available to the defendant:
"(a) Any written or recorded statement, including any testimony before a grand jury and an examination videotaped pursuant to section 190.32 of this chapter, made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness’s testimony.”

. Two other items were not turned over which are arguably Rosario material. In light of our holding that reversal is required for failure to turn over the two items which the People concede are Rosario material, we need not decide whether the other items were also improperly withheld.

. Despite the suggestion of the concurring Judge that the material in question is duplicative of other material previously turned over by the People (see, concurring opn, at 554, 556), the People do not contend that the material is duplicative. Duplications are, of course, an exception to the Rosario rule (People v Ranghelle, 69 NY2d 56, 63; People v Consolazio, 40 NY2d 446, 454).

. The assumption on which the concurrer and the People would base harmless error here — that the withheld Rosario material was of only "de minimis” or "minimal” value — is illustrative. Whether this assumption is valid or whether, as defendant contends, the five pages of notes concerning, among other things, Taza’s drug dealing and the loss of his job for embezzlement would have constituted "valuable impeachment material” is beside the point. The significant fact is that the conclusion that the information was of no value must necessarily be founded on sheer speculation as to what might have occurred and matters not in the record: i.e., the questions counsel might have asked or avoided asking, how the witness might have answered, and how such differences in the testimony might have affected the decision of the jury.