(April 7, 1988)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR QUINONES, Appellant.—Judgment of the Supreme Court, New York County (Alvin Schlesinger, J.), rendered June 6, 1985, which convicted defendant, after a jury trial, of criminal possession of stolen property in the first degree and sentenced him to an indeterminate term of incarceration of 3½ to 7 years, is reversed, on the law, and the matter remanded for a new trial.

On January 30, 1985, defendant and Scott Horn were en-

gaged in a heated argument over a leather jacket defendant was wearing, which Horn recognized as his and which he claimed had been stolen when his home was burglarized the previous December. The argument attracted attention and the police were summoned. The police arrested both defendant and Horn. At the precinct, a search of the leather jacket uncovered a plastic bag containing stolen jewelry. This jewelry was identified by jeweler Nishan Purshial as having been stolen from his safe sometime in January of 1985.

At trial, before the cross-examination of arresting Officer Stuart Goldstein took place, defense counsel objected that the witness' memo book had not yet been produced and that he could not therefore cross-examine the officer. The prosecutor explained that the officer had not been told to bring his memo book. The court instructed defense counsel to proceed with the cross-examination to the extent that he could. During the cross-examination, counsel also learned that Goldstein had completed arrest papers regarding defendant and Horn's arrests, which were also not produced at trial. A third problem arose when the People delayed in producing the police complaint report relating to the burglary of Horn's apartment until after Horn's trial testimony. However, defense counsel was permitted to reopen Horn's cross-examination, during which Horn acknowledged that the burglary report failed to make any mention of the fact that a leather jacket had been stolen.

Prior to submitting the case to the jury, the court dismissed the count of criminal possession of stolen property which related to the leather jacket, because of the inconclusive testimony concerning the monetary value of the jacket. The jury did, however, convict defendant of first degree criminal possession of stolen property for the possession of the stolen jewelry.

We reject defendant's argument that the People's delay in producing the UF 61 report concerning the Horn burglary complaint requires reversal, since the delay cannot be said to have substantially prejudiced the defense. (See, *People v Ranghelle,* 69 NY2d 56, 63.) Counsel was permitted to cross-examine Horn about the report and used the report to the advantage of the defense by emphasizing that the report omitted any mention of the leather jacket having been stolen. Furthermore, the count of the indictment relating to the criminal possession of the leather jacket was dismissed.

However, we do agree that a reversal and remand for a new trial is required on the basis of the People's failure to turn

over Officer Goldstein's memo book and the reports pertaining to the arrests of Horn and defendant. In *People v Ranghelle (supra,* 69 NY2d, at 63), the Court of Appeals made clear that when "the prosecution fails completely in its obligation to deliver such *[Rosario]* material to defense counsel, the courts will not attempt to determine whether any prejudice accrued to the defense. The failure constitutes per se error requiring that the conviction be reversed and a new trial ordered".

The People candidly concede that certain *Rosario* material, Officer Goldstein's memo book and the police documents pertaining to defendant and Horn's arrests, were never turned over to the defense at trial. Despite *Ranghelle's* firm holding that failure to turn over *Rosario* material is per se error requiring reversal, the People would still attempt to frustrate this clear rule by asking this court to hold this appeal in abeyance, until a hearing can be held to determine whether any possibility exists that the unproduced documents are duplicative of other *Rosario* material that was produced at trial. The People do not claim that the documents are in fact duplicative, but, rather, argue that they should be given an opportunity to find out if the materials fall outside the *Rosario* rule and under the very limited exception for duplicative materials.

We strongly reject the People's argument on a number of grounds. First, the possibility that the materials are duplicative is very slim considering that even the slightest of differences can provide grounds for impeachment. Secondly, the People never even claimed at trial that the materials were duplicative. Their sole excuse for failing to produce the materials at trial was that the police officer was not told to bring to court his memo book and the arrest papers.

It has now been over 25 years since the Court of Appeals first ruled in *People v Rosario* (9 NY2d 286, 289) that "a right sense of justice" requires that the People turn over to defense counsel for cross-examination purposes a witness' prior statements relating to the subject matter of that witness' testimony. The notes and reports of a police officer witness were specifically included as *Rosario* material as early as 1965 in *People v Malinsky* (15 NY2d 86, 90-91). In *People v Persico* (24 NY2d 758 [1969]), a new trial was ordered because the trial court failed to require a police officer to produce his memo book. Years later, in 1976, the Court of Appeals again reminded trial courts that a police officer's notes and reports had to be produced for cross-examination. *(People v Gilligan,* 39 NY2d 769, 770.)* Clearly, we are not dealing with an elusive

principle of law or a rarely encountered situation, so that it is quite incomprehensible that the prosecutor did not inform Officer Goldstein to produce his memo book and the arrest reports for trial.

A right sense of fairness also requires that concomitant with the prosecutor's obligation to turn over *Rosario* material is his obligation to specify any objection he may have to furnishing the materials requested and claimed by counsel to be *Rosario* material. *(People v De Jesus,* 69 NY2d 855, 857.) Otherwise, the People waive any objection they may have had. *(Supra.)* The People's failure to raise a timely objection, moreover, may not be overlooked in the interest of justice, since our interest of justice jurisdiction extends only to appellants claiming error. *(See,* CPL 470.15 [1].)

It is important to emphasize that we are not dealing with a situation where the materials could not be found, despite good-faith efforts to locate them, or where the materials were thought not to exist. Accordingly, nothing stood in the way of the prosecutor challenging the materials as duplicative and there is nothing that compels us to give the People a second opportunity to do so. While there are limited instances in which the People may be granted a rehearing to present additional evidence to resolve a legal question, that practice is one constrained both by considerations of fairness and the extent to which the People already had an opportunity to present that evidence. Accordingly, "where 'no contention is made that the People had not had [a] full opportunity to present evidence * * * [t]here [is] no justification * * * to afford the People a second chance to succeed where once they had tried and failed' *(People v Bryant,* 37 NY2d 208, 211; but see *People v Cardaio,* 18 NY2d 924). Denial of a rehearing under these circumstances accords with a system that offers a single opportunity for the presentation and resolution of factual questions. If such a practice were not followed, the defendant * * * would be haunted by the specter of renewed proceedings." *(People v Havelka,* 45 NY2d 636, 643.)

While *Havelka (supra)* concerned a different issue of criminal law, granting the People a second opportunity to present new evidence in opposition to a motion to suppress evidence, the same considerations are relevant in the *Rosario* context, where fairness is said to be the "focus" of the *Rosario* rule. *(People v Jones,* 70 NY2d 547, 553.) Having foregone their opportunity to present the claim of duplicative material, there is no reason to give the People a second bite at the apple. We know of no case law to support the dissent's broad conclusion

that the People's "claim of exemption from the *Rosario* requirement ought to be cognizable whenever raised."

Neither do the cases cited by the People and the dissent support their claim that the proper remedy for this admitted and inexcusable *Rosario* violation is a remand for a hearing. *People v Poole* (48 NY2d 144) established that when the prosecutor represents either that certain alleged *Rosario* material does not exist or that the material is excepted from the rule, it is for the trial court to inspect, in camera, the questioned document or file to resolve the dispute. *(Supra,* at 149.) The trial court may not accept the prosecutor's representation without its own inspection. *(Supra.)* This is, of course, the procedure to follow when the prosecutor makes a timely objection at trial. *Poole* is irrelevant to the situation herein, where the People neglected to raise any challenge to the disputed material.

The two Fourth Department cases cited in the People's brief, *People v Phillips* (92 AD2d 738) and *People v Jones* (91 AD2d 1175), are applications of the *Poole* rule. In *Phillips* the trial prosecutor denied the existence of a document, and in *Jones* the trial prosecutor argued that the document was privileged "work product". However, in each case the trial court failed to follow the procedure set forth in *Poole (supra)* of conducting an in camera investigation of the file or document in question. On appeal, the appellate court remanded so that the inspections could take place. *(People v Phillips, supra,* 92 AD2d, at 739; *People v Jones, supra,* 91 AD2d, at 1176.) The remedy in these cases hinged on the fact that the courts simply accepted the prosecutors' representations that the materials were excepted from disclosure without conducting their own review. Those situations are totally different from the case at bar where the prosecutor waived the duplicativeness argument.

What is most disconcerting about the reliance on these cases is that these decisions, which were meant to protect the defense's right to dispute the prosecutor's claims of exemption from *Rosario (supra),* are now being turned around to support a claim that despite the People having carelessly failed to produce the materials at trial and having waived the opportunity to challenge the materials as duplicative at trial, they should now be permitted a second chance to prevent application of the per se reversal rule for *Rosario* violations. Such an argument would completely thwart the Court of Appeals persistent and patient "efforts at careful development of a State standard which, while fair to the prosecution, accords to

the defendant a degree of protection commensurate with the importance of *Rosario* rights." *(People v Jones, supra,* 70 NY2d, at 551; *see also, People v Ranghelle,* 69 NY2d 56, *supra; People v Perez,* 65 NY2d 154; *People v Consolazio,* 40 NY2d 446.)

If we remand, as the People suggest, on the slim chance that the materials are duplicative, when there is not even a basis in the record to substantiate this claim, there is nothing to prevent the People from making this exact argument in every appeal where there has been a failure to turn over *Rosario* material. Not only would this result in delays to defendants who will have to, in most instances, remain incarcerated pending resolution of such claims, it would also represent a significant dilution of the per se reversal rule announced in *Ranghelle (supra).* Prosecutors would not have as strong an incentive to follow strictly the carefully developed State standard of affording defendants those materials to which they are entitled to conduct effective cross-examination. It would, furthermore, be tantamount to permitting a review to determine whether the defense has been prejudiced, since the reason for the exception for duplicative material is that there can be no error or prejudice in not receiving materials that are "cumulative only." *(People v Consolazio, supra,* 40 NY2d, at 454.) This is exactly the type of review condemned in *People v Ranghelle (supra,* 69 NY2d, at 63).

It is important to keep in mind that "[t]he focus of *Rosario* is on fairness to defendant". *(People v Jones, supra,* 70 NY2d, at 553.) What the People request as a remedy for this *Rosario* violation smacks of unfairness and cannot be granted. This conviction must be reversed and a new trial ordered.

We have carefully reviewed defendant's other points raised on appeal and find them to be without merit. Concur—Murphy, P. J., Carro, Milonas and Kassal, JJ.

Sullivan, J., dissents in a memorandum as follows: Rather than reverse and remand for a new trial on the basis of the *Rosario* violation, which is conceded, I would remand for a hearing to determine whether the nondisclosed documents, namely, the arrest report of Scott Horn and Officer Goldstein's memo book, are duplicative equivalents of already disclosed information.

While a prosecutor, after the jury has been sworn and before the prosecutor's opening statement or, in the case of a nonjury trial, after its commencement and before the submission of evidence, is obliged to turn over to defense counsel any

pretrial statements of the People's witnesses relating to their trial testimony (CPL 240.45 [1] [a]; *People v Jones,* 70 NY2d 547; *People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866), the People are not required to produce statements that are "duplicative equivalents of statements previously turned over to the defense". *(People v Consolazio,* 40 NY2d 446, 454, *cert denied* 433 US 914; *People v Ranghelle,* 69 NY2d 56, 63; *see also, People v Payne,* 52 NY2d 743, 745.) Thus, defendant is not entitled to a new trial if the withheld documents contain only duplicative equivalents of information which he has already received. "Duplications are * * * an exception to the *Rosario* rule". *(People v Jones, supra,* 70 NY2d, at 551, n 3.) Since neither Horn's arrest report nor Officer Goldstein's memo book is part of the record, this court cannot make the factual determination as to whether these documents are duplicative. Thus, the appropriate remedy is not reversal but remand to determine whether the withheld documents are, in fact, duplicative equivalents of previously furnished documents. *(See, People v Poole,* 48 NY2d 144, 149; *People v Phillips,* 92 AD2d 738, 739.)

The majority rejects remand as an alternative, arguing that the People failed to urge duplicate equivalency at trial and that the record fails to yield the slightest factual support for such a claim. But, as already noted, duplicative equivalency is an exception to the *Rosario* rule. *(People v Jones, supra,* 70 NY2d, at 551, n 3; *People v Ranghelle, supra,* 69 NY2d, at 63; *People v Consolazio, supra,* 40 NY2d, at 454.) Since a *Rosario* violation, such as is involved here, based not on delay but on a complete failure to deliver the required documents, constitutes per se error mandating reversal without any consideration whatsoever to whether a substantial right of the defendant was prejudiced *(People v Ranghelle, supra,* at 63; *see, People v Consolazio, supra,* 40 NY2d, at 454; *see also, People v Perez,* 65 NY2d 154), a claim of exemption from the *Rosario* requirement ought to be cognizable whenever raised. Moreover, the claim can be easily resolved by a comparison of the nonproduced documents with those claimed to be duplicates. In fact, the comparison could be done at the appellate level after a request for submission of the nonproduced documents and the already produced *Rosario* material claimed to be duplicative, thereby avoiding the delay over which the majority is concerned. Finally, in arguing that a remand for a comparison to determine duplicative equivalency is in reality an inquiry into prejudice to the defense, the majority manifests confusion between duplication, an exception to *Rosario (supra),* and

prejudice, which in the case of a complete failure to turn over, is irrelevant. They are separate and distinct concepts.