■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DHORUBA BIN WAHAD, Formerly RICHARD MOORE, Appellant.

Defendant, a professed leader of the Black Panthers, was convicted in the May 19, 1971 machine-gun shooting of two police officers, Thomas Curry and Nicholas Binetti. The conviction was affirmed by this court (51 AD2d 891 [1976] [without opn]) and by the Court of Appeals (42 NY2d 421 [1977] [with opn], *cert denied* 434 US 987 [1977]).

As a result of a Federal civil rights action commenced in December of 1975 (*Moore v Federal Bur. of Investigation,* Dist Ct, SD NY, 75 Civ 6203) the defendant received, during the ensuing 13 years of litigation, more than 300,000 pages of documents from the FBI and New York City Police Department. On April 18, 1988 he brought the instant motion, pursuant to CPL 440.10 (1) (b), (c), (f), (g) and (h), to vacate his conviction, attaching some 300 pages of FBI and Police Department documents. Wahad claimed, *inter alia,* that some of the documents constitute *Rosario* material which had not been disclosed by the prosecution at trial.

The People concede that prior to trial, the New York City Police Department's then Chief of Detectives, Albert Seedman, possessed three FBI reports dated September 29, 1971 (108 pages), November 4, 1971 (59 pages) and December 3, 1971 (52 pages). They state that the September 29, 1971 report contained documents related to the Curry/Binetti shooting and concede that they were not disclosed to the defense. They maintained that Seedman had not incorporated these reports into the Department's file on this case and that the Trial Assistant was unaware of their existence.

The September 29, 1971 report included one memorandum describing an "anonymous" call to the police by the prosecution's chief witness, Pauline Joseph, exonerating the defendant, three memoranda describing FBI interviews of Pauline Joseph, and one memorandum describing an FBI interview of Augustus Qualls, a prosecution witness who was the defendant's accomplice in a social club robbery. As to these five documents the People contend that the information contained in them was either made available to the defense through other sources and in fact utilized, as reflected by over 800 pages of transcript, in an attempt to impeach the credibility of these two prosecution witnesses, or of minor impeachment

value. More specifically, they contend that the FBI memorandum which described the "anonymous" call was a duplicative equivalent of a police logbook entry and of information in a "New York" magazine article, that certain inconsistencies appearing in the first memorandum of Joseph's FBI interviews were the same as inconsistencies in her Grand Jury testimony, and that the logbook entry, article and Grand Jury transcript were utilized extensively in the defense examination of her.

The motion court, citing *People v Howard* (127 AD2d 109, *supra*), reluctantly denied that portion of the motion which raised violations of *People v Rosario* (9 NY2d 286 [1961], *rearg denied* 9 NY2d 908 [1961], *cert denied* 368 US 866 [1961]), and held in abeyance, pending review by this court, the remaining issues raised by defendant's motion.

In light of the admitted failure of the People at trial to provide the defense with prior statements of prosecution witnesses in violation of *People v Rosario (supra)*, reversal of the conviction is required unless the duplicative equivalent of the withheld material was turned over. *(See also, People v Ranghelle,* 69 NY2d 56, 63 [1986]; *People v Martinez,* 71 NY2d 937, 940 [1988] [citing, *inter alia, People v Jones,* 70 NY2d 547, 553 (1987); *People v Novoa,* 70 NY2d 490, 499 (1987)]; *People v Palmer,* 137 AD2d 881 [3d Dept 1988], *lv denied* 71 NY2d 1031 [1988].) The burden of identifying, locating and disclosing prior statements made by their witnesses to law enforcement agencies rests solely with the People. *(People v Ranghelle,* 69 NY2d, *supra,* at 64.) "As long as the statement relates to the subject matter of the witness' testimony and contains nothing that must be kept confidential, defense counsel should be allowed to determine for themselves the use to be made of it on cross-examination." *(People v Rosario,* 9 NY2d, *supra,* at 289.)

Further, we are persuaded that the Court of Appeals in *People v Novoa* (70 NY2d 490, *supra)* and *People v Jones* (70 NY2d 547, *supra* [both decided in Nov. 1987]) effectively overruled *People v Howard (supra* [Apr. 8, 1987]). *People v Novoa* involved an appeal from an order of this court which affirmed both a conviction and an order denying a CPL 440.10 motion. A *Rosario* issue was raised in the context of the CPL 440.10 motion. The Court of Appeals, without reaching the other issues raised on the combined appeals, reversed the conviction based upon the *Rosario* violation, holding it to be per se error, and ordered a new trial.

In *People v Jones (supra)*, a direct appeal from a conviction,

the court again vacated the conviction based upon a per se *Rosario* error. The court specifically rejected application of any "harmless error" analysis to a *Rosario* violation as inconsistent with the nature and purpose of *Rosario,* stating: "The focus of *Rosario* is on fairness to [the] defendant—not on the conduct or motives of the prosecutor. If *Rosario* material is denied the defendant, he has been deprived of what he should have. It matters not that the denial may have been inadvertent or immaterial." *(Supra,* at 553.)

As to the People's argument that the memorandum concerning the call by Pauline Joseph exonerating the defendant was the duplicative equivalent of information contained in a police log and in a magazine article, we note the following. The police log is not included in any of the papers submitted on this appeal. However, the log was concededly admitted at trial and apparently contained the same information which was in the magazine article. It is conceded by the People that the log was not turned over to the defense until Pauline Joseph had left the stand. When the defense requested to recall her to the stand, the People stated, incorrectly, that she was unavailable, having been released on February 21, 1973. Documents indicate that she was still in police custody as a material witness as of March 1, 1973. Second, a tape of the conversation was apparently never turned over to the defense. Third, the magazine article which the defense used in its cross-examination of Pauline Joseph was in no sense an excuse for not turning over the *Rosario* material or a substitute for it. Nevertheless, because of the limited nature of the information in the record before us and the limited argument in the briefs on the duplicative equivalent issue, we deem it advisable to remand on this issue.

As to the other documents not turned over, the People attempt to minimize any inconsistency between the testimony of Pauline Joseph or Augustus Qualls at trial and the information contained in the documents. *Rosario (supra)* states, however, that it is not the function of a court to try to determine the value to the defense of prior statements of witnesses. *(People v Jones, supra,* at 553.) Concur—Kupferman, J. P., Sullivan, Carro, Smith and Rubin, JJ.