THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MILDRED JACKSON, Appellant.

First Department, May 10, 1990

APPEARANCES OF COUNSEL

*Patrick J. Hynes* of counsel *(Mark Dwyer* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Marianne Karas* for appellant.

### OPINION OF THE COURT

KASSAL, J.

■ Where a delay in the delivery of *Rosario* material has permanently foreclosed its use by defense counsel, the violation must be deemed to constitute not a mere delay, subject to prejudice analysis, but a complete failure to produce, requiring automatic reversal.

During the early morning hours of August 18, 1984, Patricia Sprauve died in an upper Manhattan courtyard on West 147th Street, from a gunshot wound to the chest. Four months later, on December 22, 1984, Anthony Stewart, arrested on the complaint of defendant, Mildred Jackson, for the rape and sodomy of her seven-year-old daughter, told Detective Richmond DeCosta, that Jackson had murdered Patricia Sprauve. The three-page statement taken by Detective DeCosta and signed by Stewart forms the basis of the claim, made pursuant to *People v Rosario* (9 NY2d 286, *cert denied* 368 US 866), which defendant raises as her primary argument on appeal.

The account of Anthony Stewart, an admitted marihuana dealer who had entered the United States illegally and whose arrest for child rape and sodomy made him subject to deportation, told of a fistfight between defendant and the shooting victim's sister, Renee Sprauve, whom defendant had jealously confronted in Stewart's apartment, and the ensuing courtyard events, which culminated in the fatal shooting.

Because the Immigration and Naturalization Service was seeking his immediate deportation, the District Attorney's office obtained permission, under the provisions of CPL article

660, to conduct and videotape a conditional examination of Anthony Stewart. On the date of this proceeding, February 22, 1985, the hearing court noted on the record, and the Assistant District Attorney (ADA) confirmed, that defense counsel had not yet received all of the *Rosario* material, and that the items still outstanding would be provided by the ADA before the commencement of the afternoon session. In accordance with this arrangement, defense counsel received, prior to her cross-examination of Anthony Stewart, what the ADA designated as "the final piece of *Rosario* material".

Anthony Stewart was deported to Jamaica on March 1, 1985. At a *Wade* hearing held on August 15, 1985, six months after his conditional examination, defense counsel was given, for the first time, *Rosario* material consisting of the December 1984 statement taken by Detective DeCosta. Counsel registered an immediate objection to the *Rosario* violation, and demanded that Anthony Stewart be produced for further cross-examination. This was apparently not possible, and defendant was subsequently convicted after a trial in which Anthony Stewart's videotaped statement was admitted as part of the People's case, pursuant to CPL article 670.

The seminal case of *People v Rosario (supra)* established the now quite familiar rule, subsequently codified in CPL 240.45 (1) (a), that the prosecution is obligated to turn over to defense counsel any prior statement which "relates to the subject matter of [its] witness' testimony", and emphasized that the "single-minded counsel for the accused" is in the best position "to appraise the value of a witness' pretrial statements for impeachment purposes" (at 289-290). In setting forth these principles, the court was "persuaded that a right sense of justice entitles the defense to examine a witness' prior statement, whether or not it varies from his testimony on the stand" (at 289).

In the 29 years since this salutary rule was established to "afford the defendant a fair opportunity to cross-examine the People's witnesses at trial" *(People v Poole,* 48 NY2d 144, 149), our courts have consistently adhered to, and refined, the "fundamental objective underlying *Rosario*". *(People v Jones,* 70 NY2d 547, 550.) Thus, for example, in *People v Consolazio* (40 NY2d 446, 454), the court "reject[ed] arguments that consideration of the significance of the content or substance of a witness' prior statements can result in a finding of harmless error" *(see also, People v Jones, supra,* at 551; *People v Novoa,* 70 NY2d 490, 499), and in *People v Perez* (65 NY2d 154, 158-

159) the claim that the witness' statements to private parties were not *Rosario* material, was likewise rejected.

In *People v Ranghelle* (69 NY2d 56, 63), the court distinguished a *Rosario* violation consisting of delay from that of complete failure to deliver, holding that delayed delivery called for the reviewing court to ascertain whether the defendant was substantially prejudiced, while a complete failure to deliver "constitute[d] per se error requiring that the conviction be reversed and a new trial ordered". In the matter before us, the People urge that the *Rosario* material was merely delayed, not completely withheld, and therefore falls within the first category. In light of the circumstances presented, this argument must be rejected.

On application of the People, the testimony of Anthony Stewart was to be preserved on videotape because of his anticipated unavailability for defendant's trial. Thus, the People were well aware that the proceeding by which this extraordinary procedure was to take place would represent the sole opportunity for defense counsel to cross-examine this principal witness. It was, therefore, particularly incumbent upon the People to ensure that its *Rosario* obligations were fully met. Instead, however, the People inexplicably omitted the very statement by which defendant was accused of the homicide, i.e., the three pages describing the entire event as reported and signed by Anthony Stewart, and as taken by the detective who was in charge of the homicide investigation and who subsequently arrested the defendant. As this court recently observed, in a reversal based on a similar *Rosario* violation, "Clearly, we are not dealing with an elusive principle of law or a rarely encountered situation, so that it is quite incomprehensible that the prosecutor did not [obtain the arresting detective's reports]". *(People v Quinones,* 139 AD2d 404, 406-407, *affd* 73 NY2d 988.)

For all of these reasons, we are drawn to the inescapable conclusion that the People's delay must be interpreted as a complete failure to deliver and, as such, constitutes per se reversible error requiring a new trial. *(People v Ranghelle, supra,* at 63; *People v Novoa, supra,* at 499.) This holding represents "no more than a logical application of the rule established in *People v Rosario",* for to hold otherwise would "frustrate the very purpose and underlying policy considerations of the rule" *(People v Jones, supra,* at 553), since "[i]n order to serve their intended purpose, pretrial statements should be given to defense counsel at a time when they can

meaningfully assist in the preparation of the cross-examination". *(People v Perez, supra,* at 159.)

■ Despite the People's claim to the contrary, the *Rosario* issue was preserved for appellate review as a matter of law by defense counsel's immediate and specific objection, registered upon receiving the material six months after Stewart's testimony was recorded, and nearly as long after his deportation. *(See,* CPL 470.05 [2]; *People v Leisner,* 73 NY2d 140.) Counsel's objection, which was incorporated by reference as a continuing objection for subsequent proceedings, including the trial, was termed "eminently clear" by the hearing court, a description seconded by the ADA, who generously volunteered that, "It seemed clear to me, Your Honor." Were it not to have been so clearly preserved, the egregious nature of this error would have dictated that we nevertheless reach the issue in the interest of justice.

In light of this determination, we decline to address the remaining arguments raised by defendant on appeal.

Accordingly, the judgment, Supreme Court, New York County (Alvin Schlesinger, J., at trial; Peter McQuillan, J., at conditional examination; Stanley Sklar, J., at *Wade* hearing), rendered March 17, 1986, convicting defendant of murder in the second degree (Penal Law § 125.25 [1]), should be reversed, and the matter remanded for a new trial, at which the testimony of Anthony Stewart, taken pursuant to CPL article 670 on February 22, 1985, shall be excluded.

MURPHY, P. J., ROSENBERGER and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, rendered on March 17, 1986, unanimously reversed, on the law, and the matter remanded for a new trial, at which the testimony of Anthony Stewart, taken pursuant to CPL 670 on February 22, 1985, shall be excluded.