■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MILDRED JACKSON, Appellant.—Upon remittitur from the Court of Appeals, the judgment, Supreme Court, New York County (Alvin Schlesinger, J., at trial; Peter McQuillan, J., at conditional examination; Stanley Sklar, J., at *Wade* hearing), rendered March 17, 1986, convicting defendant of murder in the second degree (Penal Law § 125.25 [1]), and sentencing her to an indeterminate term of imprisonment of from 15 years to life, is unanimously reversed, on the facts and as a matter of discretion in the interest of justice, and the matter remanded for a new trial, at which the testimony of Anthony Stewart, taken pursuant to CPL article 660 on February 22, 1985, shall be excluded.

In our earlier disposition of this appeal [157 AD2d 126], we reversed and remanded for a new trial on the ground that the failure of the People to timely provide defense counsel with certain material pursuant to *People v Rosario,* (9 NY2d 286, *cert denied* 368 US 866), constituted reversible error within the meaning of *People v Ranghelle* (69 NY2d 56).

The Court of Appeals reversed [78 NY2d 900], concluding that the issue had not been preserved for appellate review as a matter of law *(see,* CPL 470.05 [2]), and remitted to this

Court for a determination of the facts and consideration of issues not previously reached.

Upon review of this record, we find that, at a videotaped conditional examination of prosecution witness Anthony Stewart, conducted on February 22, 1985, pursuant to the People's application under CPL article 660, defense counsel was informed that she had been given "the final piece of *Rosario* material" in this prosecution for murder in the second degree. The conditional examination was necessitated by the imminent deportation of Stewart, an illegal alien who had been arrested for child rape and sodomy upon the complaint of defendant, his paramour, who alleged that he had sexually attacked her 7-year-old daughter. It was only after defendant had commenced criminal proceedings against him that Stewart accused her of the four-month-old homicide of Patricia Sprauve.

On August 15, 1985, six months after the conditional hearing and Stewart's deportation, a *Wade* hearing was held, at which defense counsel was provided, for the first time, *Rosario* material consisting of a three-page statement which Stewart had made and signed at the time that he reported to Detective Richmond DeCosta that defendant had committed the murder. When this material, which formed the basis for defendant's arrest, was given to defense counsel on August 15, 1985, her ability to re-open cross-examination of the then-deported Stewart was completely foreclosed.

In light of this record, we conclude that justice requires that defendant be accorded a new trial and, accordingly, exercise our interest of justice jurisdiction to reverse the judgment of conviction and remand for this purpose. (See, *People v Kidd,* 76 AD2d 665; CPL 470.15 [3] [c]; [6] [a].) The *Rosario* material omitted was of a nature that it is "quite incomprehensible" that the prosecutor did not obtain it until long after the witness had been videotaped—at the prosecution's behest— and deported (*People v Quinones,* 139 AD2d 404, 407, *affd* 73 NY2d 988) and when it could no longer be used in cross-examining a principal witness in this prosecution for murder. For these reasons, we further hold that the interest of justice precludes the use of Anthony Stewart's videotaped testimony at the re-trial.

In reviewing this record, we are also led to conclude that two other points raised by defendant on appeal merit the exercise of our interest of justice jurisdiction. First, the prosecutor improperly elicited testimony from Anthony Stewart

regarding uncharged drug sales by defendant, by questioning him as follows:

"Q. * * * [D]id the Defendant ever work with you?

"A. Yeah * * *

"Q. What type of work?

"A. She was selling reefer * * *

"Q. Is that marijuana?

"A. Yeah * * *

"Q. And how long was the Defendant selling marijuana with you * * *?

"A. I would say for about nine month [sic].

"Q. Nine months?

"A. Nine, ten months".

This testimony was clearly improper under the standards enunciated in *People v Molineux* (168 NY2d 264). The evidence of this prior misconduct and uncharged crime "had no relevance to any material issue in the case and tended only to demonstrate defendant's general criminal propensity." *(People v Hudy,* 73 NY2d 40, 54; *see also, People v Lewis,* 69 NY2d 321, 325; *People v Ventimiglia,* 52 NY2d 350, 359.) Where, as here, the defendant did not take the stand in her own behalf, such evidence was without even impeachment value. *(See, People v Sandoval,* 34 NY2d 371.) Moreover, the uncharged offense elicited, to wit, drug dealing, is one which is especially inflammatory and prejudicial. *(See, People v Ortiz,* 142 AD2d 248.)

Defendant's right to a fair trial was further impaired by improper comments made by the prosecutor during summation. Among these was an instruction to the jury that a trial is "the search for the truth", a remark which has repeatedly been disapproved by appellate courts. *(See, e.g., People v Rivera,* 116 AD2d 371, 375-376; *People v Sepulveda,* 105 AD2d 854, 857; *People v Robinson,* 83 AD2d 887.) In addition, the prosecutor improperly denigrated the defense by asserting that it raised "false issues", that one defense witness had been "programmed to come in and give you a fictional version", and that the jury should "reject the false, manipulative testimony presented by the defense". Such commentary exceeds the boundaries of fair comment. *(See, People v McMillan,* 66 AD2d 830, 831.)

While these errors, if considered individually, may not have warranted reversal, their cumulative effect served to deprive

defendant of a fair trial and, particularly in light of the reversible *Rosario* violation, prompts us to reach them in the interest of justice. *(See generally, People v Termini,* 65 AD2d 825.)* Concur—Murphy, P. J., Rosenberger, Kassal and Smith, JJ.