■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL FIELDS, Appellant.—Appeal from the judgment of the Supreme Court, New York County (Rose L. Rubin, J.), rendered on December 13, 1985, convicting defendant, following a jury trial, of criminal possession of a controlled substance in the fourth degree and sentencing him, as a predicate felon, to an indeterminate term of imprisonment of from 3 to 6 years, is held in abeyance and the matter remanded for a hearing to

determine whether defendant received the effective assistance of counsel so as to knowingly and intelligently waive his right to move to set aside the judgment of conviction.

At the trial held in connection with the instant matter, Police Officer Joseph LaSalla testified that in the early evening of July 30, 1985, while it was still daylight, he was on foot patrol near 124th Street and Lenox Avenue in Manhattan when he observed defendant and two companions exit a yellow cab. As they did so, an unidentified man approached the officer and told him that he believed that defendant was carrying a gun. Officer LaSalla then looked at defendant and noticed a bulge in his right pants pocket. Defendant and his friends crossed to the west side of Lenox Avenue and walked north towards 125th Street. As Officer LaSalla began to follow defendant, he broadcast defendant's description over the police radio. He stated that defendant was a black male, about 6 feet, 2 inches tall, wearing a bright red shirt, who was "a possible man with a gun."

In the meantime, Police Officers Hector Arocena and Alfred Artesona were on motor patrol heading eastbound on 125th Street when they heard the radio call. After driving across Seventh Avenue, they spotted defendant on the north side of 125th Street. Officer Artesona, who was behind the wheel, maneuvered the police car onto the sidewalk as defendant was passing in front of the State office building at 163 West 125th Street. At that point, the two officers in the vehicle, as well as Officer LaSalla, saw defendant toss a brown medicine bottle with a white cap into the bushes along the building. According to Officer Arocena, the bottle landed near a Dixie cup lying underneath the bushes. Thereupon, Officers Arocena and La-Salla stopped defendant while Officer Artesona searched the bushes and recovered the bottle, which was found to contain 21 small glass vials having a white powdery substance. Defendant was arrested and searched, and an electronic pager, or beeper, was removed from the pocket where Officer LaSalla had observed the bulge. An analysis by a police chemist later revealed that the white substance was a cocaine mixture with an aggregate weight of one eighth of an ounce and five grains.

Based largely upon the foregoing facts, the jury convicted defendant Michael Fields of criminal possession of a controlled substance in the fourth degree. Defendant subsequently appeared for sentencing on December 13, 1985, more than three weeks after the jury had been discharged. On that date, the prosecutor provided defense counsel with the handwritten notes of a parole officer's pretrial interview with Officer La-

Salla. The District Attorney acknowledged that while this material should have been produced at or prior to trial, he had only just received the notes in question by messenger that same day. The prosecutor stated that he had spoken with the parole officer on the telephone and had requested that she mail him whatever notes she might have made in interviewing witnesses for defendant's revocation of parole hearing. In that regard, there was some discrepancy between the parole officer's notes and Officer LaSalla's testimony to the extent that the notes indicated that Officer LaSalla had claimed that defendant discarded an envelope rather than a medicine bottle, that the bulge which the officer had noticed was in the back, not right, pants pocket of defendant and that he had received a call instead of a personal approach concerning a man with a gun.

Defendant's attorney asked permission to confer with his client about the new *Rosario* material. The court agreed, and then defendant's lawyer asserted (no recess or pause is reflected in the minutes of the proceeding) that "I've conferred with Mr. Fields on this. I've indicated to him that there does seem to be a contradiction in this write-up in that the indication is of an envelope being found with 21 viles *[sic]* rather than a pill container. * * * I've discussed that discrepancy with Mr. Fields and as well as the entire offered new Rosario material and Mr. Fields has indicated to me that he does not wish to reopen the trial based upon this particular matter itself." Defense counsel, however, reserved the right to appeal on other grounds, and the court proceeded to pronounce sentence.

On September 18, 1987, defendant filed a motion pursuant to CPL 440.10 to vacate the judgment of conviction or, in the alternative, for an evidentiary hearing, alleging that he was denied his Sixth Amendment right to the effective assistance of counsel when his attorney failed to move to set aside the verdict upon learning that the prosecution had not produced the *Rosario* material during the trial. In his affidavit, defendant contended that his trial attorney had informed him that the undisclosed notes would not have made a difference in the outcome of the trial and advised defendant simply to appeal his conviction. His counsel had not, defendant asserted, explained that the People's failure to provide the material would have entitled him to a reversal of his conviction and a new trial. The prosecutor, in response, argued that as a result of the statement made by his lawyer at sentencing, defendant had waived any claim to reopen the trial because of the parole

officer's notes. In an oral decision, the court subsequently denied defendant's motion without conducting a hearing.

The law is clear that a violation of the *Rosario* rule *(see, People v Rosario,* 9 NY2d 286; CPL 240.45 [1] [a]) cannot be considered harmless error even if the nondisclosed material would have been of limited impeachment value to the defense so that the People's failure to produce "constitute[s] per se reversible error requiring a new trial" *(People v Martinez,* 71 NY2d 937, 940; *see also, People v Jones,* 70 NY2d 547; *People v Perez,* 65 NY2d 154; *People v Consolazio,* 40 NY2d 446). In the present situation, the People contend that the mandates of *Rosario* are inapplicable here. According to the prosecution, while it is the People's obligation to provide to the defense all pertinent material in the possession of local law enforcement agencies, that duty does not extend to statements or other documents possessed by an independent administrative agency such as the State Division of Parole since these items cannot be deemed to be within the control of the local prosecutor. Thus, the People liken the parole officer's notes involved in the present situation to a court stenographer's minutes about which the Court of Appeals declared in *People v Fishman* (72 NY2d 884, 886), that "[t]he *Rosario* rule has no application in the circumstances of this case, where untranscribed plea minutes of a potential prosecution witness have been ordered but not received by the prosecution. Having had no immediate access of their own to the statements * * * the People cannot be held responsible for a failure to turn them over to defendant."

There is, however, a crucial distinction between minutes transcribed by a court stenographer and a parole officer's notes. Unlike a court stenographer, a parole officer is an employee of what is, in effect, a law enforcement agency, the State Division of Parole. Pursuant to CPL 2.10 (23), a parole officer is a peace officer with the power to take such action as making warrantless arrests, using physical and deadly force in executing an arrest or preventing an escape, carrying out constitutionally permissible warrantless searches, and possessing and taking custody of firearms not owned by the peace officer for the purpose of disposing or guarding such firearms (CPL 2.20). Moreover, the whole purpose of the parole officer's interview with Officer LaSalla was to prepare parole violation charges against defendant, and if defendant were, at the conclusion of the appropriate proceedings, ultimately found to be guilty of those charges, he would likely be returned to prison to serve additional time. Violating a person's parole

and sending him back to prison is certainly a prosecutorial function.

Similarly, the notes of a parole officer are in no way comparable to confidential statements made to a registered social worker, which are statutorily protected from disclosure (CPLR 4508), determined by the Court of Appeals in *People v Tissois* (72 NY2d 75) not to be covered by the People's *Rosario* obligation under the circumstances therein, or comparable to a newspaper reporter's notes which this court ruled in *Matter of Gina C.* (138 AD2d 77) need not be produced by the prosecutor. *(See also, People v Reedy,* 70 NY2d 826, wherein the victim's written version of the attack upon him was deemed not to be *Rosario* material.) It is significant that the social worker in *People v Tissois (supra)* was employed by the Brooklyn Society for the Prevention of Cruelty to Children, and in *Matter of Gina C. (supra),* the notes in question belonged to a reporter writing for The Village Voice. Clearly, in neither of these instances did the People have possession or control of the material at issue, constructive or otherwise, in that both entities, the Brooklyn Society for the Prevention of Cruelty to Children and The Village Voice, are, in common with court stenographers *(see, People v Fishman, supra),* not part of the prosecutorial function whereas the State Division of Parole does belong to the law enforcement system. Indeed, not only had the District Attorney herein specifically requested the parole officer to send him whatever notes she might have made in interviewing witnesses intended to be called at defendant's bail revocation hearing, but, at defendant's sentencing, the prosecutor conceded that these notes should have been provided at or prior to trial.

There is no authority for the sweeping proposition advanced by the People on appeal that their *Rosario* responsibility is limited to having to supply only those statements actually present in their own or police department files at the time of trial. Consequently, we decline to weaken the prosecution's obligation by holding that the People have no duty to produce material in the possession of another law enforcement agency *(see, People v Ranghelle,* 69 NY2d 56), particularly one with which it apparently has frequent contact. Since the police officer's statements to the parole officer were certainly not duplicative and were, to some extent, contradictory to those which he made at trial, the District Attorney was required to disclose them at or prior to trial, and the failure to do so constituted a *Rosario* violation.

Our concurring brother suggests (at 512) that the majority's

position would require the prosecutor affirmatively to seek out "any notes or written versions of prior unprivileged statements made by any prospective witnesses to parole or probation authorities, family therapists, drug or alcohol counselors, relatives, friends, confidantes or the like." However, the holding of the majority memorandum is limited to the facts of the instant case, which involve the notes of a parole officer. In our view, such notes are *Rosario* material because they were in the possession or control of a law enforcement agency. While someone might legitimately disagree with the majority's conclusion that the State Division of Parole is a law enforcement agency, it is contradictory to find that the prosecutor cannot, on the one hand, be deemed to have constructive possession or control over parole department documents but that the defendant is, on the other hand, entitled to a hearing because of the District Attorney's admission that the parole officer's summary should have been provided at trial and due to the fact that the prosecutor had been in telephone contact with the parole officer.

Notwithstanding any statement by the prosecutor, the notes in question are either *Rosario* material or they are not. If they are, failure to disclose the notes is per se reversible error; if they are not, the People were not obligated to produce them, and no hearing is warranted no matter what the District Attorney said or what was in his mind. That the People recognize this legal imperative is demonstrated by the fact that, on appeal, they argue simply that the State Division of Parole is an independent administrative agency not subject to the dictates of *Rosario (supra)*. The People do not take the position that while the items being sought are indisputably not *Rosario* material, the District Attorney might still be required to turn them over under certain circumstances, such as, for example, if he had some knowledge of the contents thereof. Finally, it should be noted that the defense's ability to obtain the notes on its own initiative is entirely irrelevant to whether the People were required to turn them over since the Court of Appeals has expressly rejected the notion that the *Rosario* rule, although otherwise applicable, need not be complied with in those instances where the defense has knowledge of, or access to, the material *(People v Ranghelle, supra,* at 64).

The People also claim that regardless of whether they were obliged to produce the parole officer's notes, defendant waived his right to challenge the conviction on this ground. Yet, in submitting a motion under CPL 440.10, defendant stated in his affidavit that his attorney had not properly advised him of

the legal effects of the District Attorney's nondisclosure and that the failure of his counsel to communicate adequately with him amounted to ineffective assistance of counsel. Based upon defendant's allegations, there is a question of fact as to whether his legal representation was sufficiently effective to enable him to knowingly and intelligently waive his right to move to set aside the conviction. Accordingly, defendant is entitled to a hearing with respect to this issue. Concur—Kupferman, J. P., Carro, Milonas and Smith, JJ.

Sullivan, J., concurs in a separate memorandum as follows: We are all in agreement that the matter should be remanded for a hearing. I believe, however, that since the summary of Officer LaSalla's prior statement given to defendant's parole officer does not, ipso facto, constitute *Rosario* material, the focus of such hearing should not be on the effectiveness of counsel insofar as the waiver of defendant's "right" to move to set aside the conviction on the basis of a *Rosario* violation is concerned, but rather the circumstances as to how the summary surfaced and, in particular, whether defendant already had access to such document. In my view, only the resolution of these issues will determine whether the summary is actually *Rosario* material.

Contrary to the majority's conclusion that the parole officer's summary constitutes *Rosario* material, and notwithstanding the prosecutor's concession at sentencing that it should have been provided at the time of trial, it is clear, on the record before us, that the prosecutor did not receive a copy of the parole officer's notes until the day of defendant's sentencing, approximately one month after the verdict. Thus, the statement defendant claims he should have received at trial was not in the prosecutor's possession, custody or control until after the trial.

Since the parole officer's notes of Officer LaSalla's interview were not in the People's possession, they do not constitute *Rosario* material. Both sound policy concerns and the statutory structure of the CPL's discovery sections provide compelling reasons for limiting the scope of the *Rosario* obligation to prior statements in the prosecutor's possession or control. For instance, the Jencks Act, the Federal statute from which the *Rosario* rule is derived, requires that only prior statements which the prosecutor possesses be disclosed. *(See,* 18 USC § 3500.) Furthermore, while the CPL's discovery provision requires the prosecutor to "ascertain the existence of" material which is generally discoverable (CPL 240.20 [2]), its *Ro-*

*sario* rule counterpart, CPL 240.45, pointedly omits any such obligation on the prosecutor's part.

Moreover, there is no practical justification to extend the *Rosario* doctrine, a reciprocal rule applicable to both sides in a criminal prosecution and grounded in fairness, to any record or notation of the statements of a defense or prosecution witness made to anyone at all. Indeed, defendant's argument would require that both the prosecutor and defense counsel, in addition to conducting the usual investigation and trial preparation, seek out any notes or written versions of prior unprivileged statements made by any prospective witnesses to parole or probation authorities, family therapists, drug or alcohol counselors, relatives, friends, confidantes or the like. Such a rule, supported, in the case of a prosecutorial lapse in the discharge of that duty, by a penalty of automatic reversal, would effectively immunize some defendants from prosecution, and impose an enormous drain on prosecutorial resources. Not surprisingly, the Court of Appeals has rejected the argument that *People v Rosario* (9 NY2d 286) should apply to statements outside the prosecutor's possession or control. *(People v Tissois,* 72 NY2d 75; *see also, People v Fishman,* 72 NY2d 884; *Matter of Eric W.,* 68 NY2d 633.)

Pragmatically, as well as logically, *Rosario (supra)* should not be interpreted to require the People to perform the defendant's legwork for him, or to obtain material in the possession of an independent third party. Rather, as the Court of Appeals and this court have both held, *Rosario* only requires the turnover of all prior written statements of prospective prosecution witnesses or recorded accounts thereof in the prosecutor's actual or constructive possession. *(See, People v Fishman, supra; People v Tissois, supra; Matter of Eric W., supra; Matter of Gina C.,* 138 AD2d 77.)

In *Fishman (supra),* for example, the Court of Appeals held that untranscribed minutes of a witness's statement in the sole possession of a court reporter were not *Rosario* material. Similarly, in *Matter of Gina C. (supra),* this court declined to extend the *Rosario* rule to a reporter's notes of an interview with a prospective prosecution witness. Likewise, a rape victim's concealed personal written account of the crime, not in the prosecution's possession or control, was held to be outside the scope of *Rosario (supra). (People v Reedy,* 70 NY2d 826, 827.) And in *Matter of Eric W. (supra),* the Court of Appeals excluded from the scope of section 331.4 (1), the Family Court Act's equivalent of the *Rosario* requirement, the untranscribed minutes of an earlier proceeding not in the prosecut-

ing agency's possession. In *Tissois (supra)*, the Court of Appeals refused to extend the *Rosario* requirement to an interview with a crime victim as reflected in a social worker's notes, which were not in the prosecutor's possession or control.

The language employed in the disposition of other cases interpreting CPL 240.45 also confirms that a *Rosario* violation occurs only on the failure to turn over a prior statement in the prosecutor's possession at the time of trial. In *People v Martinez* (71 NY2d 937), notes inadvertently destroyed by a police officer, and of which the prosecutor was unaware until late in the trial, were never produced. In rejecting the argument that reversal was thereby mandated, the court noted that the per se reversible error rule of *Rosario (supra)* applies only when "the People fail completely to provide the material to the defendant *even though they continue to possess it"*. *(Supra,* at 940 [emphasis added]; *see also, People v Jones,* 70 NY2d 547, 550 *[Rosario* applies "if the People are in *possession* of a statement of their own prospective witness"] [emphasis added].)

The restriction of *Rosario (supra)* to documents in the People's possession does not, of course, relieve the prosecutor of the responsibility for producing documents possessed by at least one third party, the police department. That obligation, however, in no way undercuts the rule of *Fishman (supra)*, *Reedy (supra)* and *Matter of Gina C. (supra)*, since police agencies are part of the criminal law enforcement community, which is considered to be peculiarly within the prosecutor's control. *(See, People v Ranghelle,* 69 NY2d 56, 64 [the People have the "burden of locating and producing prior statements of complaining witnesses, filed with police agencies"]; *Matter of Gina C.,* 138 AD2d 77, *supra.)* Whatever may be the prosecutor's obligation to produce statements in the possession of local law enforcement agencies, over which he exercises at least some control, no rational basis exists to extend that obligation to material in the possession of a State administrative agency such as the State Division of Parole, which cannot be considered within the control of a local prosecutor by any view.

As with the court stenographer in *Fishman (supra)*, the prosecutor does not have constructive possession or control over documents in the possession of the State parole department. In fact, that department is a totally independent State agency, which, especially in instances where its parole recommendations clash with those of the prosecutor, may often find

itself in an adversarial position with a local prosecutor. *(See, e.g., Prosecutor Questions Parole for Suspect,* New York Times, Mar. 12, 1984, at 12, col 6; *Charges Fly Over Parolee Held in Officer's Fatal Shooting,* New York Times, Feb. 17, 1984, at 1, col 5; *Closed Hearing on Parole Sought,* New York Times, Jan. 11, 1986, at 28, col 4.) In short, far from being within the constructive control of a local prosecutor, the documents in a defendant's parole department file are at least as accessible to the defendant as to the prosecutor, if not more so.

Indeed, defendant, who, with counsel, had appeared at the parole revocation hearing a month before his criminal trial even began, had better access to the statement at issue than did the prosecutor. The State Division of Parole is a statutorily created State agency which is legally obligated to provide access to its files to any parolee at risk of having his parole revoked. *(See,* Executive Law § 259 [1]; 9 NYCRR 8000.5 [c] [1] [ii].) Thus, by law, defendant and his counsel had the right to obtain copies of any document in his "parole case record" before his final revocation hearing, held just one month before his criminal trial. *(See,* 9 NYCRR 8000.5 [c] [1]-[8].)

At the very least, applicable law requires that a parolee and his assigned attorney be served with written notice of his parole revocation hearing, which must include a copy of "the report of violation of parole" and "identify such other documents and information that are intended to be entered into evidence" at the hearing. (9 NYCRR 8005.18 [c].) Both defendant and his counsel acknowledged at the revocation hearing that they had received this notice. Moreover, the notice of violation form lists Officer LaSalla as a "possible" exhibit. Since hearsay statements of witnesses are admissible at such a hearing *(see,* 9 NYCRR 8005.2 [a]), it is entirely possible, if not likely, that defendant's counsel reviewed the Parole Division file and the "undisclosed" hearsay statement in preparation for the hearing. Had defendant moved to set aside the verdict on *Rosario* grounds, the record might very well have shown that he or his attorney at the revocation hearing had taken advantage of these access provisions and seen the statement well before his criminal trial even began.

Even if neither defendant nor his revocation hearing attorney ever reviewed a copy of the statement, it is clear that, at the very least, they had access to it, upon proper request, long before his criminal trial began. His access was certainly greater than that of the prosecutor, who, insofar as this record discloses, apparently did not have formal notice of the revoca-

tion proceeding, was not served with any relevant documents, and was not responsible for prosecuting the parole violation.

Additionally, knowing that defendant's parole had been revoked, defendant's counsel in the criminal proceeding could have contacted the lawyer who had represented him at the hearing, or could himself have sought to obtain the revocation case records. No rule of fairness should require that a prosecutor, who, unlike a defendant and his counsel, receives no formal notice of such a proceeding at all, must obtain and produce records to which a defendant parolee has easy access. Indeed, applying *Rosario (supra)* in this situation would be an incongruous corollary to a rule which, grounded in fairness, demands production of statements in the prosecutor's possession because, "ordinarily [defense] counsel would have no knowledge of it and no other means of obtaining it." *(People v Jones,* 70 NY2d, *supra,* at 550.)* To apply *Rosario* to a case such as this where, for all that appears, the prosecutor had no knowledge of the existence of a statement to which defendant had ready access, would hardly promote fairness.

I am persuaded, however, that a hearing to the extent indicated is in order in light of the prosecutor's statement at sentencing that the parole officer's summary "should have been provided at the time of trial" and that he "had been dealing with [the parole officer] by telephone". Perhaps the prosecutor was aware of the contents of the summary at the time of trial even though the summary itself was not received until the day of sentence. Thus, the hearing should be limited to an exploration of this issue as well as defendant's access to the document. Only if the prosecutor knew of the contents of the summary at the time of trial, and defendant did not have access to said document or its duplicate equivalent *(see, People v Ranghelle,* 69 NY2d, *supra,* at 63; *People v Consolazio,* 40 NY2d 446, 454), would an inquiry into the effectiveness of counsel insofar as a knowing waiver of defendant's right to move to set aside the conviction on the basis of a *Rosario* violation be appropriate.

Finally, as noted throughout this concurrence, I do not believe that the parole officer's summary, without more, constitutes *Rosario* material. It might be, as already indicated, if the prosecutor had been aware of its contents before or during the trial. There is nothing inconsistent about these two statements, as the majority argues. Thus, a hearing is required to resolve the issue.