OPINION OF THE COURT
Albert D. Koch, J.
The defendant, Michael Johnson, was convicted of murder in the second degree following a trial by jury before this court, *341 and on August 10, 1992 was sentenced to an indeterminate term of imprisonment from 25 years to life.
The defendant now moves, pursuant to CPL 440.10, to set aside the verdict on the grounds that the People failed to meet their Rosario obligations (People v Rosario, 9 NY2d 286; CPL 240.45).
In support of his motion the defendant alleges that the Associate Medical Examiner who testified at trial made an audiotaped record of the autopsy and that this audiotape was never provided to the defense. The People maintain that they were never in possession of the audiotape. The court assumes the truth of the foregoing for purposes of this decision.
DISCUSSION
In People v Rosario, the Court of Appeals ruled that "a right sense of justice entitles the defense to examine a witness’ prior statement, whether or not it varies from his testimony on the stand” (People v Rosario, supra, at 289). This rule was later codified as CPL 240.45. A failure by the prosecution to produce Rosario material has been held to be error per se (People v Jones, 70 NY2d 547).
The Rosario case (supra) concerned material that was in the prosecutor’s file. In People v Ranghelle (69 NY2d 56), the Court dealt with a police report that had not been turned over to the prosecution, despite the prosecutor’s attempts to obtain it. The Court rejected the People’s argument that the defendant had equal access to the material and could have subpoenaed it himself, stating "[a]s we observed in Rosario, 'the state has no interest in interposing any obstacle to the disclosure of the facts’ ” (supra, at 64). The Court went on to rule that "society’s interest in maintaining criminal trials as truth-finding processes requires that the burden of locating and producing the prior statements of complaining witnesses, filed with police agencies, remain solely on the People” thus placing an affirmative duty on the prosecution to seek out Rosario material. (Supra.) Moreover, the Court held that "the People’s good-faith effort to locate, identify and discover all Rosario material does not excuse their failure to produce covered material” (supra, at 63).
In People v Fields (146 AD2d 505), the People failed to obtain and turn over to the defense the notes of a parole officer made during an interview with a prosecution witness. The Court ruled that this was a Rosario violation, reasoning *342 that, because a parole officer functions as both a peace officer and a prosecutor, the State Division of Parole is "in effect, a law enforcement agency.” (Supra, at 508.) Thus, the Court implicitly held that the Parole Department is a police agency within the meaning of Ranghelle (supra). The Fields Court also rejected the argument that the defense had equal access to the notes in question. (Supra.)
Of course, not every public entity is a police agency under Ranghelle (supra). The appellate courts of this State have specifically excluded material in the possession of the Department of Motor Vehicles (People v Flynn, 79 NY2d 879), a County Attorney’s office (Matter of County of Nassau v Sullivan, 194 AD2d 236), the Crime Victims Compensation Board (People v Letizia, 159 AD2d 1010) and the Victims Services Agency (People v Berkley, 157 AD2d 463) from the ambit of Rosario (supra) and Ranghelle.
In the present case, the People were never in possession of the audiotape. Thus, their failure to provide it to the defense is an error only if the Office of the Chief Medical Examiner is a police agency under Ranghelle (supra). Turning to the question of what brings an agency within the mandatory disclosure requirements of Ranghelle, the court finds three factors determinative. First, the agency must be a public entity. The People are not required to seek out materials in the hands of private parties unless the People have actual possession of the material or, it was generated at the request of law enforcement personnel (People v Anonymous, 154 Misc 2d 963; see, People v Reedy, 70 NY2d 826 [personal version of crime written by victim held not Rosario]; People v Perez, 65 NY2d 154 [statements recorded by private party at prosecutor’s behest held Rosario]).
The second factor is that the material be generated for the purposes of prosecution. This factor distinguishes Ranghelle and Fields (supra) from Flynn, Sullivan, Letizia and Berkley (supra). Moreover, the purpose of the Rosario rule is to insure that the defense is given the benefit of "any 'information that can legitimately tend to overthrow the case made for the prosecution, or to show that it is unworthy of credence’ ” (People v Rosario, supra, at 290 [citations omitted]). Rosario does not, however, require the People to seek out all evidence favorable to the defendant. Rather, it is limited to the prior statements of witnesses within the prosecution’s possession or control. This helps to insure the accuracy and veracity of the evidence that the People choose to present. Extending the *343 People’s burden to other agencies which generate potential Rosario material for the purposes of prosecution is consistent with the purpose of Rosario because such agencies are the ones most likely to be in possession of material that can legitimately upset the prosecution’s case.
The final factor is that the material must be generated by an agency with an institutional interest in the prosecution. The Police and Probation Departments have an institutional interest in prosecutions that place them in relationships that are adversarial to defendants. Requiring defendants to obtain materials directly from these departments would engender suspicion that material was being withheld. This concern is not present when the adversarial relationship is absent.
Arguably, this position is undercut by the rejection in Ranghelle and Fields (supra) of the argument that the defense had equal access to the material in question. However, the criteria formulated by those courts required mandatory disclosure of material in the hands of, respectively, police and law enforcement agencies. These formulations exclude agencies which lack an adversarial relationship with the defendant. Moreover, one of the ramifications of a finding that an agency is a police agency is that it places an affirmative duty on the prosecution to seek out materials in that agency’s files. Under these circumstances, it would be illogical to remove the People’s access to the materials as a factor for consideration. Finally, where there is no adversarial relationship with the defendant, the People’s failure to seek out materials on the behalf of the defense cannot be viewed as interposing an obstacle to the disclosure of the facts (see, People v Ranghelle, supra, at 64).
Accordingly, the court finds that a public agency that generates potential Rosario material for the purposes of prosecution and has an institutional interest in conviction is a police agency under Ranghelle (supra). Applying this rule to the Office of the Chief Medical Examiner, the court finds that it is not such an agency.
Unlike the Police and Probation Departments, the Medical Examiner has no responsibility in enforcing the criminal law. While the Medical Examiner must "promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner in charge, any indication of criminality” (NY City Charter § 557 [g]), this is not a prosecutorial func *344 tion; the prosecution begins when charges are leveled against a defendant. In some cases charges are pending prior to the autopsy and in these cases the autopsy notes may properly be viewed as having been generated in furtherance of a prosecution. Nevertheless, the Medical Examiner is not a police agency because it has no institutional interest in the outcome of the trial.
The facts attested to by a Medical Examiner are neutral in themselves; they take on incriminating (or exculpatory) significance only when viewed in conjunction with other evidence. The police, on the other hand, are often eyewitnesses to the conduct alleged. In some cases, such as buy and busts, they may be viewed as participants in the crimes. Furthermore, they are often called upon to defend the legality of their actions in gathering evidence. This gives rise to an adversarial relationship between the police and defendants and gives the police an institutional interest in the prosecution. The Medical Examiner does not have this type of adversarial relationship with the defendant (see, United States v Rosa, 11 F3d 315 [2d Cir 1993]).
The lack of an adversarial relationship, combined with the guilt-neutral context of Medical Examiner reports, compels the conclusion that there is no danger in requiring defendants to discover these materials themselves. Accordingly, the Medical Examiner’s Office is not a police agency under Ranghelle (supra) and the People’s failure to obtain these materials was not error. The defendant’s motion is, therefore, denied.