[—— NYS2d ——]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JOSHUA WASHINGTON, Appellant.

Second Department, April 4, 1994

APPEARANCES OF COUNSEL

*Philip L. Weinstein,* New York City *(James M. Branden* of counsel), for appellant.

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn *(Roseann B. MacKechnie, Michael Gore* and *Caroline R. Donhauser* of counsel), for respondent.

*Richard A. Brown, District Attorney* of Queens County, Kew Gardens *(Steven J. Chananie* and *Linda Cantoni* of counsel; *Sharon Y. Brodt* with them on the brief), *amicus curiae.*

## OPINION OF THE COURT

MANGANO, P. J.

The primary question to be resolved on the instant appeal is whether an audiotape of an autopsy performed by the Office of the Chief Medical Examiner (hereinafter OCME) constitutes *Rosario* material *(see, People v Rosario,* 9 NY2d 286; *see also,* CPL 240.45 [1] [a]), which must be turned over by the prosecution to the defense. In our view, this question must be answered in the negative.[1]

I

On April 25, 1991, the defendant was convicted, after a nonjury trial, of manslaughter in the first degree, arising out of the fatal stabbing of one Kevin Gregg.

During the course of the trial, Dr. Joaquin Gutierrez, an associate medical examiner who performed the autopsy on the victim's body, testified for the prosecution that the cause of death was a six-inch-deep stab wound to the chest, which penetrated the heart. According to Dr. Gutierrez, the victim also suffered a stab wound to the right temple, a laceration on the top of the head, and several minor abrasions. Dr. Gutierrez testified that the stab wound to the head would not have

---

1. We note that a large majority of our colleagues considering this issue at the trial court level have held to the same effect *(see, People v France,* 159 Misc 2d 869 [Kings County, Juviler, J.]; *People v Baskerville,* NYLJ, Mar. 8, 1994, at 27, col 2 [NY County, Altman, J.]; *People v Clark,* 160 Misc 2d 81 [Kings County, J. Goldberg, J.]; *People v Mines,* NYLJ, Feb. 8, 1994, at 26, col 1 [Queens County, Demakos, J.]; *People v McDaniel,* NYLJ, Feb. 8, 1994, at 27, col 3 [Suffolk County, Rohl, J.]; *People v Farreli,* 159 Misc 2d 992 [Richmond County, Kuffner, J.]; *People v McCullough,* NYLJ, Jan. 7, 1994, at 29, col 3 [Kings County, Aiello, J.]; *see, People v Railey,* 159 Misc 2d 393 [NY County, Adlerberg, J.]).

caused death. Finally, Dr. Gutierrez testified that one knife might have caused both stab wounds, but it was possible that two different knives had been used.

On December 6, 1993, this Court affirmed the defendant's judgment of conviction (see, People v Washington, 199 AD2d 294), and leave to appeal to the Court of Appeals was denied on February 22, 1994 (see, People v Washington, 83 NY2d 811).

On November 18, 1993, while the defendant's direct appeal was pending, the defendant filed a motion pursuant to CPL 440.10, to vacate his judgment of conviction on the ground that the People had violated the Rosario rule by failing to turn over, inter alia, an audiotape made by Dr. Gutierrez of the victim's autopsy.[2]

After receiving opposition papers from the People, the Supreme Court, by order dated January 3, 1994, denied the defendant's motion on the ground that the People did not have control over the OCME audiotape.

II

In People v Rosario (9 NY2d 286, supra), the Court of Appeals held that the People are obligated to give the defendant, for use during cross-examination, any nonconfidential written or recorded statements of a prosecution witness that relate to the subject matter of the witness's testimony. It is well settled that disclosure under the Rosario rule is required only when the material sought is within the People's actual or constructive possession, custody, or control (see, People v Reedy, 70 NY2d 826). The two classic examples which have been held to satisfy this latter requirement are documents in the custody of the police department (see, People v Ranghelle, 69 NY2d 56) and the State Division of Parole (see, People v Fields, 146 AD2d 505), which are both, concededly, law enforcement agencies. In People v Fields (supra), the Appellate Division, First Department, relying in part on the People's concession, reversed a conviction because the prosecution failed to turn over to the defense the notes of the defendant's parole officer taken during an interview with a prosecution

2. Since the defendant's motion was made on November 18, 1993, i.e., before this Court rendered its decision on the defendant's direct appeal, we will assume, for the purpose of the instant appeal, that a Rosario violation, if established, would be per se error (see, People v Jones, 70 NY2d 547; People v Robles, 194 AD2d 750).

witness. In defining the functions of a law enforcement agency, the First Department held *(People v Fields, supra,* at 508-509): "[A] parole officer is an employee of what is in effect, a law enforcement agency, the State Division of Parole. Pursuant to CPL 2.10 (23), a parole officer is a peace officer with the power to take such action as making warrantless arrests, using physical and deadly force in executing an arrest or preventing an escape, carrying out constitutionally permissible warrantless searches, and possessing and taking custody of firearms not owned by the peace officer for the purpose of disposing or guarding such firearms (CPL 2.20). Moreover the whole purpose of the parole officer's interview with [the arresting officer] was to prepare parole violation charges against defendant, and if defendant were, at the conclusion of the appropriate proceedings, ultimately found to be guilty of those charges, he would likely be returned to prison to serve additional time. Violating a person's parole and sending him back to prison is certainly a prosecutorial function".

Apart from the police and probation departments, the courts of this State have consistently refused to expand the scope of the *Rosario* rule *(see, e.g., People v Tissois,* 72 NY2d 75 [statements made by a prosecution witness to a social worker for a child welfare agency were not in the People's possession or control and were not *Rosario* material]; *People v Fishman,* 72 NY2d 884 [untranscribed plea minutes of prosecution witness were not *Rosario* material]; *People v Reedy, supra* [victim's personal written version of crime was not in the People's possession or control and was not *Rosario* material]; *People v Flynn,* 79 NY2d 879 [accident report filed by complainant with State Department of Motor Vehicles was not within the People's possession or control and was not *Rosario* material];[3] *People v Berkley,* 157 AD2d 463 [statement by a rape victim to the Victim Services Agency was not within the People's possession or control and was not *Rosario* material]; *People v Letizia,* 159 AD2d 1010 [victim statement to the Crime Victims Compensation Board was not in the People's possession or control and was not *Rosario* material]; *Matter of Dwayne H.,* 173 AD2d 466 [operations report created by an employee of the Board of Education was not within the

---

3. The holding of the Court of Appeals in *People v Flynn (supra),* viz., that the Department of Motor Vehicles was not an agency under the constructive control of the People, takes on even greater significance in light of the fact that investigators of that agency are also designated peace officers by virtue of CPL 2.10 (32).

constructive possession or control of the presentment agency and was not *Rosario* material]).

### III

With respect to the precise issue raised on the instant appeal, there are precedents at the appellate level which have held, under related scenarios, that OCME is not a law enforcement agency. Specifically, in *United States v Rosa* (11 F3d 315 [2d Cir]), the United States Court of Appeals for the Second Circuit held that the language of rule 803 (8) of the Federal Rules of Evidence, excluding from evidence reports that are prepared by "law enforcement personnel", did not apply to employees of OCME. Similarly, in *People v Santiago* (200 AD2d 370), the Appellate Division, First Department, held that the failure to preserve evidence by members of the medical examiner's office, who were not law enforcement personnel, was not attributable to the People.

The holdings in *United States v Rosa (supra)* and *People v Santiago (supra)* are clearly supported by the history, composition, and duties of OCME.

OCME is an independent agency created by the New York City Charter and is affiliated for administrative purposes with the Department of Health of the City of New York (NY City Charter § 557 [a], [c]). The medical examiners who staff OCME do not exercise the powers of peace officers. Rather, they are doctors who are qualified as pathologists and microscopists (NY City Charter § 557 [a], [c]). Indeed, the principal function of OCME is to officially determine the cause of death when death occurs under any one of several distinct circumstances (i.e., "from criminal violence, by casualty, by suicide, suddenly when in apparent health, when unattended by a physician, in a correctional facility or in any suspicious or unusual manner" (NY City Charter § 557 [f]; *see also,* Administrative Code of City of NY §§ 17-201, 17-203). OCME cannot bring criminal charges against anyone. Its sole purpose is to give an impartial scientific determination of the cause of a person's death and not to determine whether an individual is guilty, or not guilty, of a crime.

Ultimately, the defendant's argument rests on (1) New York City Charter § 557 (g) which requires OCME to deliver to the

District Attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner in charge, any indication of criminality, and (2) Administrative Code of the City of New York § 17-205 which provides that "[t]he appropriate district attorney * * * may require from the chief medical examiner such further records, and such daily information, as [he or she] may deem necessary".

The mere fact that the District Attorney has access to records generated by OCME does not rise to the level of control required under the *Rosario* rule. Although OCME is obligated to keep its records "in such form as may be provided by law" (NY City Charter § 557 [g]), neither the City Charter nor the Administrative Code mandate OCME to make an audiotape of an autopsy in the first instance, or even to retain the audiotape. As two recent nisi prius decisions have indicated *(see, People v Railey,* 159 Misc 2d 393, *supra; People v McCullough,* NYLJ, Jan. 7, 1994, at 29, col 3, *supra),* the District Attorney has no control over the form of the records kept by OCME, or which records OCME decides to turn over to the prosecution. Finally, there are numerous provisions of law which require governmental agencies to furnish reports to the District Attorney *(see, e.g.,* Election Law § 3-104 [3] [the Board of Elections must refer a matter to the District Attorney and make its files available if it believes a criminal violation has occurred]; Mental Hygiene Law § 7.21 [b]; § 33.13 [c] [9] [vi] [the director of a facility under the jurisdiction of the Office of Mental Health must report crimes to the District Attorney, and upon consent of the "appropriate commissioner," confidential clinical records of patients in mental health facilities must be released to the district attorney when necessary to the furtherance of a criminal investigation of patient abuse]; Insurance Law § 405 [Superintendent of Insurance must report instances of fraud to the District Attorney]). A finding of constructive control by the People over a governmental agency, based solely on the latter's obligation to furnish records to a prosecutor, as the defendant contends, cannot be sustained under the legal precedents heretofore discussed, and would, in the words of the Supreme Court in *People v McCullough (supra),* "constitute an almost blanket rule of constructive possession on the part of the People".

Accordingly, it is our view, for the reasons heretofore discussed, that the audiotape of an autopsy performed by OCME

is not *Rosario* material.[4] The defendant's motion pursuant to CPL 440.10 to vacate his conviction was therefore properly denied.

THOMPSON, BRACKEN, SULLIVAN and BALLETTA, JJ., concur.

Ordered that the order is affirmed.

---

4. The final written autopsy report is obtainable by the defense, on demand pursuant to CPL 240.20 (1) (c), which is part of the general discovery statute in criminal cases.