OPINION OF THE COURT
Alfred H. Kleiman, J.
Pursuant to CPL 440.10, defendant renewed his previously denied motion to vacate the judgment of conviction rendered January 29, 1990, convicting him after a jury trial of murder in the second degree and sentencing him to an indeterminate term of from 25 years to life imprisonment, and to grant a new trial. The appeal from this judgment has not yet been perfected.
In this particular motion, defendant claimed that the judgment should be vacated because the prosecutor failed to provide Rosario material to the defense prior to trial, specifically four taped conversations (Nos. 1, 2, 3 and 4). The People claim that the tapes (1) were not, as a matter of law, in their possession and control and (2) were not Rosario material.
A hearing was held before me on April 19 and 22, May 26 and June 6, 1994. (By written affidavit, defendant waived his presence in court.) Robert DaSilva, Marvin Hausman, Steven Kartagener, and Richard Yeskoo testified on behalf of the defense. Assistant District Attorney John Moscow, former Assistant District Attorney Jeffrey Schlanger, Detective Augustine Sanchez and Detective Evans Andre testified on behalf of the People. The court called Joseph Pinheiro, an official Portuguese interpreter specifically to verify the translation of the transcript of conversation No. 3. I found each witness’ testimony, to the extent relevant to the issues before me, to be credible with one exception noted hereinafter. The final memorandum of the parties was submitted in August 1994.
As to exhibits Al, A2 and A3 it was stipulated that they are *748 excerpts of recorded conversations from tapes that were originally vouchered in the District Attorney’s vault on December 14, 1988 and remained there until November 9, 1993. It was further stipulated that the vouchered tapes were never listened to during that time period and were never turned over to defense counsel. It was also stipulated that exhibits Al, A3, and A4 are recorded conversations containing the voice of Robert DaSilva.
The facts as extensively briefed by both sides, to the extent relevant, are uncontroverted, with the exception as to tape No. 2.
I
After listening to the tapes this court makes as a finding of fact that tape No. 2 (exhibit A2) does not contain the voice of Robert DaSilva.
II
The People contend that while they had physical possession of the tapes, the tapes were not within their control. Their argument is that since they had reason to believe the recordings violated 18 USC § 2511 (1) (a), a Federal criminal offense, listening to the tapes would have been a criminal violation under section 2511 (1) (c). I find this argument untenable, and were it dispositive of the issues before me I would have found for the defendant.
"Under our system of law the prosecutor plays an especially sensitive and crucial role, serving both as an advocate and public officer charged with the duty not only to seek convictions but also to see that justice is done, and as a public officer he or she owes a duty of fair dealing to the accused and candor to the courts.” (People v Ramos, 201 AD2d 78, 90 [1st Dept 1994].) The People had an obligation to at least have sought an in camera determination by this court, or to have turned over the tapes to the Federal authorities and sought permission of them to review same. " 'The State has no interest in interposing any obstacle to the disclosure of the facts’ ” (citations omitted). (People v Rosario, 9 NY2d 286, 290 [1961].) Even had they been in the possession of another law enforcement agency, the People would still have had a duty to produce the tapes. (People v Fields, 146 AD2d 505, 509 [1st Dept 1989].) The tapes finally came to the attention of the defendant as a result of a Freedom of Information Law *749 proceeding and the issuance of an order by a Supreme Court Justice on December 1, 1993 authorizing defendant’s attorney to listen to the tapes in the presence of the District Attorney.
(Incidently, if the Assistant District Attorney believed the tapes to have been contraband in violation of Federal law, why were they still in the District Attorney’s vault long after the conviction of the defendant?!)
Ill
The defense argues that conversation No. 1 relates to the fact that with Stern in jail DaSilva had a problem with paying his son’s tuition. He further argues that defendant had been paying the tuition, and that therefore this is evidence of DaSilva’s motive for "initiating the case against Mr. Stern.”
As to conversation No. 3, the defense argues that since DaSilva expressed to a friend that things were bad since he was "thrown out in the street” because defendant was in jail, this demonstrated bias and hostility towards the defendant and therefore reflected on his credibility.
As stated in People v Rosario (supra, at 290), "[o]ur decision presupposes that the statement relates to the subject matter of the witness’ testimony.” (Emphasis added.) "[N]ot every statement made by a witness which reflects on his credibility should be viewed as relating to the subject matter of his testimony” (People v Perez, 65 NY2d 154, 159 [1985].) "What is determinative is that the witness’s statement be relevant to the subject matter of his/her testimony; that the statement may possibly otherwise be beneficial to the defense is of no moment”. (People v Watkins, 157 AD2d 301, 313 [1st Dept 1990].)
Nothing referred to in these conversations related to the "subject matter” of DaSilva’s testimony.
These statements by DaSilva to third parties about financial hardship resulting from his cooperating with law enforcement, it is argued, are further evidence of bias against the defendant and therefore is Rosario material. To so find would be an unlimited extension of this rule of law. It is true that failure to produce Rosario material usually constitutes per se reversible error. (See, People v Consolazio, 40 NY2d 446, 454 [1976]; People v Ranghelle, 69 NY2d 56, 63 [1986]; People v Novoa, 70 NY2d 490, 498-499 [1987].) However, to be Rosario material it first must meet the test that the material must relate to the subject matter of the witnesses’ testimony; it must have been *750 relevant to the testimony of DaSilva at trial. (See, People v Palmer, 137 AD2d 881 [3d Dept], Iv denied 71 NY2d 1031 [1988].) These tapes were not. (See, People v Watkins, supra, at 313; People v Rothman, 117 AD2d 535, 536 [1st Dept 1986], affd 69 NY2d 767 [1987]; People v Ramos, supra, at 86.)
While statements of prosecution witnesses "may reflect a witness’ bias” (People v Jones, 70 NY2d 547, 552 [1987]), the Rosario "rule is simple and unequivocal: if the People are in possession of a statement of their own prospective witness relating to the subject matter of that witness’ testimony, defense counsel must, in fairness, be given a copy.” (People v Jones, 70 NY2d, supra, at 550 [emphasis added].)
Even though the defense was unaware of the tapes, the subject matter of the tapes was obviously within the knowledge of the defendant. If trial counsel considered this as further evidence of "bias” it is not for this court to speculate as to the strategy of the trial counsel in not cross-examining DaSilva as to the above. In spite of this court’s opinion that the contents of the tapes should have been brought at least to this court’s attention, considering the serious consequences of violations of the per se rule, this court is not prepared to broaden the definition of Rosario material beyond that specifically set forth in the aforementioned appellate decisions.
IV
With respect to conversation No. 4 (exhibit A4) it is not contested that this tape was not in the physical possession of the District Attorney. Nor is it contested that this tape does relate to the subject matter of DaSilva’s testimony. The defense raises a novel legal theory that the People had constructive possession of the tape. While there may be some merit to defendant’s argument, I agree with the People that it has no precedent in law. (The claim is certainly not "nonsense on stilts”* as characterized by the Assistant District Attorney.) There is no equitable basis for this further extension of the *751 Rosario rule. Incidently, but not relevant to the decision of this court, it was noted that defendant was apparently fully aware during the trial, if not before, that DaSilva was illegally taping conversations, which was not further explored by the defense.
The court further finds that at the time DaSilva made this tape, he did so on his own initiative and was not acting as a matter of fact or law as an agent of the government. (See, People v Cardona, 41 NY2d 333, 335 [1977].) I therefore find that conversation No. 4 was not Rosario material that the People were obligated to obtain and turn over to the defense.
As to other tapes introduced into evidence, they were not subjects of the original motion before me. (I permitted, as I stated on the record, additional testimony and exhibits relating to the other tapes solely so that were the appellate court to disagree with my opinion as to "constructive possession” it will have a full record before it [see, CPL 440.10 (2) (b)].)
Accordingly, defendant’s renewed motion to vacate the judgment of conviction pursuant to CPL 440.10 is in all respects denied.

 During the course of the hearings this court had occasions to admonish counsel regarding ad hominem comments. No doubt such comments in the heat of oral trial advocacy are understandable — even though not acceptable —since they are often made without reflection. While the court found the briefs helpful in reaching its decision, in the preparation of briefs, when there is obviously time to reflect, some of the characterizations by counsel, particularly by the People’s representative (such as "laughable”, "nonsensical”, "absurd”, "silly”, "cheap and gratuitous”) are totally improper, unprofessional and therefore inexcusable.