86 N.Y.2d 189 (1995)
654 N.E.2d 967
630 N.Y.S.2d 693
The People of the State of New York, Respondent,
v.
Joshua Washington, Appellant.
Court of Appeals of the State of New York.
Argued April 26, 1995.
Decided June 14, 1995.
James M. Branden, New York City, and Philip L. Weinstein for appellant.
Charles J. Hynes, District Attorney of Kings County, Brooklyn (Michael Gore and Roseann B. MacKechnie of counsel), for respondent.
Richard A. Brown, District Attorney of Queens County, Kew Gardens (Linda Cantoni, Steven Chananie and Sharon Y. Brodt of counsel), amicus curiae, pro se.
James M. Catterson, Jr., District Attorney of Suffolk County, Hauppauge (Donald J. Siewert and Patrick J. Hynes of counsel), for New York State District Attorneys Association, amicus curiae.
Chief Judge KAYE and Judges SIMONS, BELLACOSA, LEVINE and CIPARICK concur with Judge SMITH; Judge TITONE dissents in a separate opinion.
*191 SMITH, J.
The issue here is whether an audiotape made by an Associate Medical Examiner is Rosario material which must be turned over to defendant by the prosecutor. Because the audiotape may not be deemed in the control or possession of the People, we affirm the order of the Appellate Division refusing to vacate defendant's conviction.
Prior to defendant's trial for the fatal stabbing of Kevin Gregg, Dr. Joaquin Gutierrez, an Associate Medical Examiner of the office of the Chief Medical Examiner (OCME), performed the autopsy on the victim's body. Gutierrez testified concerning the location and extent of the victim's wounds and stated that two different knives may have been used in the killing. Defendant was convicted on April 25, 1991, after a nonjury trial, of manslaughter in the first degree.
On December 6, 1993, the Appellate Division affirmed defendant's conviction (see, People v Washington, 199 AD2d 294), and a Judge of this Court denied defendant's application for leave to appeal (People v Washington, 83 N.Y.2d 811). While defendant's direct appeal was pending, defendant filed a CPL 440.10 motion to vacate his conviction, contending that the People failed to relinquish an audiotape made by Dr. Gutierrez immediately after the autopsy. Supreme Court denied the motion and defendant appealed to the Appellate Division. The Appellate Division unanimously affirmed (196 AD2d 346), and a Judge of this Court granted defendant's application for leave to appeal.
Defendant contends that the People's failure to turn over the audiotape and all memorialized statements prepared by the Medical Examiner who testified for the prosecution at trial, violated the Rosario rule as a matter of law, requiring reversal of the conviction, or a hearing to determine whether the People exert sufficient "control" over OCME. The People counter that Rosario does not compel them to provide defendant with the materials defendant seeks and that notwithstanding the issue of "control," defendant is not entitled to reversal of his conviction.
In People v Rosario (9 N.Y.2d 286, 289, cert denied 368 US 866), we held that the People were required to provide for defendant any recorded statement of a prosecution witness made to the police, District Attorney or the Grand Jury, related to that witness' trial testimony. This rule was codified *192 in CPL 240.45 (1) (a). Rosario material has been held to include notes and follow-up reports of police officers (People v Martinez, 71 N.Y.2d 937, 939; People v Gilligan, 39 N.Y.2d 769; People v Malinsky, 15 N.Y.2d 86, 90); memo books of police officers (People v Ranghelle, 69 N.Y.2d 56); complaint reports filed at police precincts (id.); bribe-offer statements to a witness recorded at the request of the police (People v Perez, 65 N.Y.2d 154); a police report containing statements of a witness (People v Novoa, 70 N.Y.2d 490) and worksheets of a prosecutor containing notes of oral statements by witnesses (People v Consolazio, 40 N.Y.2d 446).
In each of the aforementioned cases, it was clear that the People's Rosario obligation included the material which was not produced because it was in the actual possession of a law enforcement agency. Where the material sought is in the possession of a person or agency other than a law enforcement agency, the test of the People's obligation to produce is whether the items sought are in the "control" of the People (see, People v Flynn, 79 N.Y.2d 879, 882 [material in possession of Department of Motor Vehicles, a State administrative agency, were not in control of prosecutor]; People v Tissois, 72 N.Y.2d 75, 78 [statements of victims of sexual abuse made to a social worker were not in control of the prosecutor]; People v Reedy, 70 N.Y.2d 826, 827 [a personal account of a sexual attack written by the victim, a free-lance writer, was not Rosario material which was in the control of the prosecutor]; see also, People v Fishman, 72 N.Y.2d 884 [untranscribed plea minutes were not Rosario material which the People were required to produce]).
Turning to the case before us, it is clear that the duties of OCME are, by law, independent of and not subject to the control of the office of the prosecutor, and that OCME is not a law enforcement agency. The Medical Examiner is required to perform an autopsy in cases where a homicide is being investigated (Public Health Law § 4210 [2]; § 4210-c [2]; NY City Charter § 557 [f]). According to section 557 (g) of the NY City Charter, the Chief Medical Examiner must maintain "full and complete records in such form as may be provided by law" and "shall promptly deliver to the appropriate district attorney copies of all records relating to every death" where in the opinion of the Medical Examiner some indication of criminality exists. Administrative Code of the City of New York §§ 17-202 and 17-203 also require OCME to consider the circumstances surrounding a death to determine the cause, especially *193 where foul play is suspected. The mandate to OCME is clear, to provide an impartial determination of the cause of death. That, however, cannot be equated with control by the People, which is essential to the Rosario obligation. The People have no power to dictate the contents or practices within OCME. Moreover, Medical Examiners have no authority to gather evidence with an eye toward prosecuting a perpetrator. Neither the New York City Charter nor the Administrative Code requires that they have training in law enforcement.
Although it was defendant's responsibility to subpoena the audiotape, we caution that nothing here should be construed to "dilute the Rosario obligation" (see, People v Ranghelle, 69 N.Y.2d 56, 64, supra). Rather, that obligation simply does not arise where, as here, the People lack control over the items in question and the entity in possession of them is not a law enforcement agency (see, People v Reedy, 70 N.Y.2d 826, 827, supra; People v Flynn, 79 N.Y.2d 879, 882, supra).
Because we have determined that the People do not have sufficient "possession or control" over documents maintained by OCME, we need not address whether the audiotape would have constituted a "duplicative equivalent" of the information contained in the autopsy report. Moreover, nothing in this record indicates that the defendant should receive a hearing on the issue of control. The facts here are distinguishable from instances where the defendant seeking evidence has not had the opportunity to determine whether the evidence is within the People's control. Illustrative of this point is our decision in People v De Jesus (69 N.Y.2d 855). De Jesus involved an 11-year-old child's claim that her father had raped and sexually abused her. The defendant sought statements the child made to a social worker employed by the Bureau of Child Welfare. The People's objection to the defendant's request was sustained on grounds differing from those the People argued at this Court. Because the trial court did not have the opportunity to address the People's subsequent contentions here, that the statements were privileged under CPLR 4508 and that nothing in the prosecutor's possession was relevant to the defendant's case, we were compelled to remand for a new trial. Here, defendant and the trial court have had ample opportunity to address the People's consistent position  that they do not exert sufficient control over OCME to require production of the audiotape. Thus, we hold that, on the facts presented, defendant was not entitled to have the *194 prosecutor produce the audiotape made subsequent to the autopsy.
Accordingly, the order of the Appellate Division should be affirmed.
TITONE, J. (dissenting).
When the office of the Chief Medical Examiner (OCME) investigates the circumstances surrounding a death by homicide, it is acting in the capacity of a law enforcement agency. Further, when such an investigation generates reports and other documentary material, those reports and material are, by statute, within the People's direct and immediate control. The combination of these factors makes OCME reports and related documents Rosario material within the meaning of CPL 240.45. Since the majority holds otherwise, I dissent.
Initially, the majority's rationale is flawed because it confuses the People's control over the documents  a critical issue in Rosario analysis  with the People's control over the documents' contents and the entity that created the documents  considerations that are irrelevant in this context. The majority's only explanation for its holding on the control issue is that "[t]he People have no power to dictate the contents or practices within OCME." (Majority opn, at 193.) Yet, every case that the majority cites in connection with the question refers to the People's "control" of the statements, not of the agency that generated or possessed them (see, People v Flynn, 79 N.Y.2d 879, 882; People v Fishman, 72 N.Y.2d 884, 886; People v Tissois, 72 N.Y.2d 75, 78; People v Reedy, 70 N.Y.2d 826, 827). Significantly, in People v Perez (65 N.Y.2d 154, 158-159), this Court specifically rejected a mode of analysis based on the People's relationship with the maker of the statement rather than the document embodying the statement itself.
Furthermore, control by the prosecutor over a statement's contents or its maker or custodian rather than over the statement itself is a logically untenable criterion for determining the validity of a Rosario claim. The District Attorney has no more legal right or duty to dictate the practices of the police department than he has to dictate the practices of the Medical Examiner. While there may be a considerable degree of informal cooperation between the District Attorney and the police, the same assumption may also be made about the relations between the District Attorney and OCME. Furthermore, the District Attorney certainly does not have the power to "dictate the contents" of the many statements and documents *195 that are generated by the police and are routinely treated as Rosario material. Thus, the People's right to "dictate the contents or practices within" the particular agency really provides no more basis for withholding Rosario status from OCME documents than it would for withholding that status from police documents (see, People v Perez, supra, at 158-159; see, e.g., People v Martinez, 71 N.Y.2d 937; People v Novoa, 70 N.Y.2d 490).
Contrary to the majority's analysis, the "control" element, when correctly applied, points clearly and unambiguously toward treating OCME documents as Rosario material. Under the New York City Charter, OCME is required to "promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner * * *, any indication of criminality" (ch 22, § 557 [g]). Further, the District Attorney or Police Commissioner may require OCME to deliver, in addition to the autopsy report, "such further records, and such daily information, as they may deem necessary" (Administrative Code of City of NY § 17-205; see also, County Law §§ 671, 673, 674 [3] [a]; § 677). Hence, unlike each of the "control" cases the majority cites (People v Flynn, supra; People v Tissois, supra; People v Fishman, supra; People v Reedy, supra; see also, People v Bailey, 73 N.Y.2d 812), the District Attorney has direct and immediate control as a matter of right over the reports generated by OCME during the course of its investigation. Indeed, the District Attorney's "control" of OCME reports is even more conclusive than is his "control" of documents possessed by police, since the latter are ordinarily made available to the People only by virtue of custom, practice and internal rules. Significantly, nothing in the majority's writing explains what the element of "control" could possibly mean if a direct and absolute statutory right to delivery of the documents, without the need to resort to subpoena, is not sufficient.
Similarly flawed is the majority's unexplained assumption that OCME, which has a significant statutorily delegated role in the investigation of crime, is not a "law enforcement agency" when it acts in pursuit of its duty to inquire into possible homicides. Whenever it receives notice of a death under suspicious circumstances, OCME must "fully investigate the essential facts," record all aspects of its investigation and take possession of any potential evidence it finds at the scene (Administrative Code § 17-202). OCME is also required to *196 follow up with an autopsy and related inquiries "[i]f the medical examiner * * * has reason to suspect that a homicide has been committed" (Administrative Code § 17-203). Needless to say, the results of OCME's homicide-related inquiries are often central to the People's case once the matter goes to trial (see, e.g., People v Stewart, 40 N.Y.2d 692). Additionally, OCME may play an important role even in nonhomicide cases by supplying the People with critical biochemical forensic analyses, such as serology testing and DNA profiling (see, e.g., People v McCain, 134 AD2d 287, 288; see also, People v Robles, 194 AD2d 750).
The fact that OCME has other functions unrelated to its role in investigating crime cannot be a valid reason to withhold the "law enforcement" label, since the same can be said about the police (see, People v De Bour, 40 N.Y.2d 210, 218). Similarly, the fact that OCME is expected to conduct its investigations in an impartial manner is an unpersuasive ground for distinguishing that agency's investigative function from that of the police, who also are expected to conduct their investigations with the sole goal of ferreting out the truth. Finally, the fact that "the duties of OCME are, by law, independent of and not subject to the control of the office of the prosecutor" (majority opn, at 192) is not a reasonable basis for ignoring that agency's law enforcement responsibilities, since the police are also by law independent of the District Attorney.
In sum, where, as here, a local governmental agency operates cooperatively with the District Attorney's office and performs investigative functions analogous to those performed by the police, it is difficult to justify a refusal to treat that agency as a member of the law enforcement team (Martinez v Wainwright, 621 F.2d 184; see, People v Nisonoff, 293 N.Y. 597, 604). While there are many other municipal agencies that incidentally assist the police or the District Attorney where appropriate, OCME is one of the few that has a statutorily imposed responsibility to investigate criminal homicides and that routinely assists the police and prosecutors in the investigation of other crimes. As such, OCME is as much a "law enforcement" agency as are the forensic units of the police department.
Finally, it makes little practical or logical sense to treat OCME autopsy reports and other relevant material as something *197 other than Rosario material. In the vast majority of homicide cases, the autopsy report will have automatically been forwarded to the District Attorney in compliance with section 557 (g) of the New York City Charter well before the commencement of trial. Where that statutorily mandated production has occurred, the District Attorney, having actual possession and control of the report, will then be required to turn it over to the defense under a routine application of CPL 240.45. It is only in that very small number of cases where there has been a failure to comply with section 557 (g) that the majority's rule will apply and the autopsy report may be lawfully withheld from the defense. The operation of the majority's rule will thus lead to arbitrary results that are rendered, if anything, even more senseless by the fact that the rule works to the defendant's disadvantage only when the Medical Examiner has failed to perform a duty enjoined by law. There can be no justification for making the outcome turn on such a capricious determinant.
Typically in homicide prosecutions, a representative of OCME is called by the People to testify about the cause and physical circumstances surrounding the death. In many of these prosecutions, this testimony is critical to the resolution of a significant litigated issue such as causation or justification. In such situations, the ability of the accused's counsel to conduct an informed cross-examination of the OCME witness may be crucial to the conduct of the defense. In my mind, it offends " `a right sense of justice' " to deprive a defendant of the full benefit of timely disclosure in these cases solely because the Medical Examiner has failed to deliver the documents to the District Attorney in accordance with the law (see, People v Perez, 65 N.Y.2d 154, 158, supra; People v Rosario, 9 N.Y.2d 286, 289, cert denied 368 US 866). This arbitrary deprivation of an important right related to cross-examination can only impair the truth-seeking process. For that reason, I would hold that the OCME audiotape at issue in this case was Rosario material and that, accordingly, the courts below erred in summarily denying defendant CPL 440.10 relief.
Order affirmed.