■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM MACHADO, Appellant. [645 NYS2d 811]

Following the defendant's conviction for kidnapping in the second degree and assault in the second degree, the People became aware of and turned over to the defendant a "Brooklyn Detective Area Confidential Report" prepared by Detective Michael Russell (hereinafter the Russell report), who had been in charge of the investigation of this case and who had testified at trial. The defendant asserted that the failure to turn over the

Russell report at trial constituted a *Rosario* violation (*see,* CPL 240.45; *People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866). The defendant's motion to raise the *Rosario* issue in his direct appeal, and to include the Russell report in the record on appeal, was denied by this Court. By notice of motion dated November 13, 1992, the defendant moved pursuant to CPL 440.10 to vacate his judgment of conviction based on his *Rosario* claim. On December 28, 1992, this Court affirmed the defendant's judgment of conviction on his direct appeal, and on March 16, 1993, the Court of Appeals denied the defendant's motion for leave to appeal this Court's decision and order (*see, People v Machado,* 188 AD2d 665, *lv denied* 81 NY2d 888). By order dated September 28, 1993, the Supreme Court denied the defendant's motion pursuant to CPL 440.10. We now reverse.

In his motion to vacate the judgment of conviction, the defendant asserted that the Russell report was *Rosario* material as to the victim, Lydia Machado, an eyewitness, Edith Pagan, and Detective Russell. The Russell report stated: "On 2/22/88 at approximately 0900 hrs William Machado forced his wife Lydia Machado into a van at knifepoint. Machado and his wife were scheduled to appear at Brooklyn Criminal Court this date on a complaint of Menacing filed by Lydia. Machado was waiting for his wife and when he forced her into the van, Eddie Morales (Lydia's Brother) attempted to assist her and as the van was moving he was dragged in excess of 300' sustaining injuries. Morales was removed to Woodhull Hospital and expired thereat. Machado drove with his wife to Connecticut and while enroute did menace and cut her on the neck with a knife. He then drove back to New York and was observed by the Aviation unit in Forest Park. A Highway unit was alerted and the van was subsequently stopped and Machado placed under arrest. Mrs. Machado sustained minor injuries and refused Medical aid".

With regard to Detective Russell, the report is not *Rosario* material because it does not relate to the subject matter of his trial testimony (*see,* CPL 240.45 [1]; *People v Rosario, supra,* at 289). The report is also not *Rosario* material as to Edith Pagan because there are no statements in the report attributable to her, and the only information which the defense could reasonably argue came from Ms. Pagan, i.e., that the defendant and Ms. Machado were scheduled to appear in Brooklyn Criminal Court that day, was not related to the subject matter of Ms. Pagan's trial testimony. However, at the CPL 440.10 hearing, Detective Russell testified that he had asked Ms. Machado if she wished to go to the hospital, but she had declined, stating

that she would go later. As a result of this, Russell wrote that she had "refused medical aid". Although Russell had already been told by another officer that Ms. Machado had declined to go to the hospital, it is clear that the statement in the Russell report about Ms. Machado refusing medical aid was a statement by Ms. Machado to Detective Russell. As such, it is *Rosario* material as to her. That the report is not a direct quote of Ms. Machado's statement is not dispositive (*see, People v Consolazio,* 40 NY2d 446, 453 ["abbreviated notes capsulizing witnesses' responses to questions" held to be *Rosario* material]; *People v Ranghelle,* 69 NY2d 56, 63-64 [complaint report containing "a synopsis of (complainant's) allegations against defendant constituted a statement of a prosecution witness that should have been disclosed"]).

Furthermore, because the defendant filed his CPL 440.10 motion before his direct appeal had been exhausted, a per se error standard is applicable (*see, People v Jackson,* 78 NY2d 638; *People v Washington,* 196 AD2d 346, 348, n 2). Therefore, the judgment of conviction must be vacated and the defendant granted a new trial. Bracken, J. P., O'Brien, Goldstein and Florio, JJ., concur.